THE CENTRAL PUBLISHING HOUSE OF REFORMED CHURCH IN THE UNITED STATES v. FLURY.

*Negligence—Church publishing house not charitable corporation or public charity, when—Municipal ordinance requiring safety locks on elevator doors—Requires doors to be closed but not locked, when—Engineer injured by falling down dark shaft, after opening door—Question for jury—Contributory negligence in not seeing warning and entering dark shaft—Darkness is warning of danger—Ordinance provisions for elevator shaft guards requires safety locks on doors, when—Ordinance interprets itself, where language unambiguous—General language restricted if conflicting with later specific provisions—Refusal to withdraw ordinance relating to maintenance of safety equipment, prejudicial—Error to refuse special request to charge jury—Without written notice from building commissioner, unnecessary to lock door—Admission of evidence of prior accident not prejudicial, when.*

1. Publishing house of reformed church, publishing material for special benefit of membership of church for purpose of disseminating religious literature, but maintaining job printing department, embracing public patronage, and subsisting on paying basis, *held* not a "charitable cor-

poration" or "public charity," which embraces amelioration of sick and needy.

2. City ordinance, requiring all doors approaching elevator shafts to have safety locks, so that doors will be closed when elevator car is not at floor where door is located, *held* not to require door to remain locked when elevator car was not at floor where door was located, but only that doors be then closed.

3. In action by engineer inspecting defendant's heating plant for injuries sustained by falling down darkened elevator shaft after opening closed door leading thereto, testimony by engineer that he did not see danger sign on door released engineer from charge of contributory negligence *per se,* and with respect to such warning question became one of fact for jury.

4. In action by engineer inspecting defendant's heating plant for injuries sustained by falling down darkened elevator shaft after opening closed door leading thereto, testimony by engineer that he found entrance so dark that he could not see foot in front of him, but nevertheless entered shaft, showed engineer was guilty of contributory negligence as matter of law, precluding recovery, by reason of warning given by darkness, where no proof was offered removing presumption of contributory negligence.

5. "Darkness" is nature's own warning to arouse natural instinct of self-protection, and is warning of danger which, if disregarded, will preclude recovery for injuries sustained by disregard of such warning.

6. Provision of ordinance requiring owners of old buildings containing elevator shafts to properly guard shafts on written notice from commissioner of buildings applies to section requiring doors approaching elevator shafts to have safety locks, so that doors will be closed when elevator is not at floor where door is located.

7. Where language of ordinance is unambiguous, ordinance interprets itself.

8. General language in group of statutes is to be restricted in its interpretation and application, when it would otherwise conflict with certain specific provisions of later statutes.

9. In action by engineer inspecting defendant's heating plant for injuries sustained in falling down darkened elevator

shaft after opening closed door leading thereto, refusal to withdraw ordinances relating to maintenance of safety equipment for elevator was prejudicial error, in view of evidence showing defendant's compliance with ordinances.

10. In action by engineer inspecting defendant's heating plant for injuries sustained in falling down darkened elevator shaft after opening closed door leading thereto, requested instruction that defendant, in absence of written notice from commissioner of buildings, was not required to have elevator door locked, *held* erroneously refused.

11. In action by engineer, inspecting defendant's heating plant, for injuries sustained in falling down darkened elevator shaft after opening closed door leading thereto, admission of evidence concerning prior accidents in same elevator *held* not prejudicial error, where court took careful pains to exclude subject from consideration of jury so that it had no serious effect in case.

(Decided March 7, 1927.)

ERROR: Court of Appeals for Cuyahoga county.

*Messrs. Tolles, Hogsett & Ginn,* for plaintiff in error.

*Messrs. Boer, Arnold, Tobias & Winsper,* for defendant in error.

SULLIVAN, P. J. This cause comes into this court on error from the court of common pleas of Cuyahoga county, and it is sought to reverse a judgment of $10,000 rendered in favor of the plaintiff below, Jacob Flury. Throughout the course of this opinion the parties will be referred to in the relationship in which they stood in the court below.

On January 14, 1925, the plaintiff, Jacob Flury, an employee of the Bishop & Babcock Company, in his capacity as mechanical engineer, in the scope of his employment, went to the business establish-

ment of the defendant in Cleveland, Ohio, to in-
spect the heating system and ascertain the cause of
certain trouble of which complaint had been made.
While so engaged he discovered a metal covered
door, shown by the exhibits, and thereupon opened
the same, and, without any examination as to the
character of the interior, stepped into an open ele-
vator shaft enveloped in darkness, and conse-
quently fell down the shaft, and received the in-
juries complained of.

There are four assignments of error as follows:

First.  That at the time of the accident the de-
fendant was a charitable corporation, or, in other
words, a public charity, and therefore not liable
under the issues made up by the pleadings.

Second.  That the court erred in the admission
as evidence of certain ordinances of the city of
Cleveland respecting the operation of elevators in
elevator shafts.

Third.  That the court erred in admitting cer-
tain evidence respecting prior accidents in the ele-
vator in question, even though the court thereafter
excluded the evidence from the jury and instructed
the jurors that they must disregard it.

Fourth.  That the plaintiff was guilty of con-
tributory negligence as a matter of law, and that
the court should have sustained motions made by
the defendant, directing a verdict in its favor.

Examining the record with reference to the first
assignment of error, that the defendant is a char-
itable corporation, we observe that there is no
issue as to whether the defendant, with knowledge,
selected incompetent officers or employees, and that
by reason thereof the injury resulted.  The claim
is made by plaintiff, however, that the corporation,

even though it be a public charity, is liable for any injury resulting from the maintenance of a situation which in and of itself is dangerous, and results in injury to another. This theory is based upon *Taylor* v. *Flower Deaconess Home and Hospital*, 104 Ohio St., 61, 135 N. E., 287, 23 A. L. R., 900, the syllabus of which is as follows:

"Where a public charitable hospital has failed to exercise due and reasonable care in the selection of physicians, nurses or attendants, and injury results from the incompetence or negligence of such persons, the hospital is liable. *Taylor, Admr.,* v. *Protestant Hospital Assn.,* 85 Ohio St., 90 [96 N. E., 1089, 39 L. R. A. (N. S.), 427] distinguished."

This theory, however, is not found in the syllabus, where the law of the case is expressed, but is found in certain language of the opinion, on pages 73 and 74 (135 N. E., 291), where it is said:

"Every principle of justice requires that they use care in the development and maintenance of the property and in the selection of servants who have the oversight of patients."

The defendant combats this theory as contrary to the law of the case as expressed in the syllabus, and insists that the limit of the doctrine in Ohio, holding public charities liable, is confined to the selection, with knowledge of their deficiencies, of negligent officers and servants.

The plaintiff, however, insists that from the record in the case the defendant is neither a charitable corporation nor a public charity. From an examination of the record we find the following extract as one of the objects of the defendant company, as incorporated:

"II. Its object shall be to publish and dissem-

inate religious newspapers, books, tracts, Sunday school publications, etc., and to obtain funds by gifts, collections, bequests and otherwise for the diffusion of a sound religious literature.''

From an examination of the record it appears that the defendant operates under the authority of the synod of the Reformed Church in the United States, and that its purposes, under Article II just quoted, are coincident with the religious purposes of the church itself throughout the United States. Its work and its mission are confined to the general membership of the Reformed Church throughout its jurisdiction, and the publication, dissemination, etc., of the newspapers, books, tracts, and Sunday school publications are for the special benefit of the membership of the church, and the object of the funds which come by way of gifts, collections, bequests and otherwise is the diffusion of a sound religious literature, in keeping with the tenets of the synod of the organization.

It is clear from the record that in the plant itself a job printing department is conducted, which embraces public patronage, and subsists on a paying basis. Thus its character is distinguished from those institutions which are known as public charities, which embrace the amelioration of the sick, the needy, the destitute, and the unfortunate. These elements are what distinctively characterize public charities, such as hospitals and other institutions devoted to satisfy, in a public way, the impoverished, the objects of charity. Charity is conferred upon those who are the objects of it. These essential features do not impregnate the instant case. If the defendant is a public charity, then by the same analysis it would seem that the churches

themselves within the jurisdiction of the synod could be considered in the same light, but, of course, no such claim is made, because no such ground exists for such claim. The defendant primarily is the subsistence of the religious status and progress of the church itself, and the fact that its publications and literature are for the religious advancement of the church is not alone sufficient to denominate it a public charity.

Our conclusions are borne out, we think, by *Watterson* v. *Halliday,* 77 Ohio St., 150, 82 N. E., 962, 11 Ann. Cas., 1096, from which we quote as follows:

"Is the Catholic Church, locally or generally, an 'institution of purely public charity'? Like the word 'exclusively,' as used in preceding clauses of said Section 2732 [Rev. St.] the word purely expresses a kindred limitation, or rather exclusion, in that it means free from mixture or combination, and, as applied in the present connection, the charity must be unalloyed with other purposes and objects. But the Catholic Church, to which the parsonages or priests' houses belong, is not an institution of purely public charity. It teaches and practices charity; but that is not its whole mission in the world. Its character is defined by the third and fourth findings made by the circuit court. There it is said: 'The Roman Catholic Church is an institution which has for its chief and primary object and purpose the teaching and extending of its recognized form of religious belief and worship into all parts of the world, and was founded to continue the work of Christ on earth, and to teach, govern, sanctify and save all men. Charity is included in its teachings, purposes and practices, as

subordinate to its spiritual teaching and purpose, but is an essential part of its general scheme of church work.' * * *

"So it seems that, instead of the church to which the residence of the priest belongs being an 'institution of purely public charity,' it is a religious institution primarily, and its charity is subordinate to its spiritual teachings, and consequently the exemption claimed is not authorized by the sixth clause of the section. In the first clause, school houses and churches are not dealt with as 'institutions of purely public charity,' but as what the clause asserts them to be, 'public school houses, and houses used exclusively for public worship,' etc.; and we think it is not permissible, when the exemption fails under the first clause, to abandon the religious character of the church edifice and organization and their relation to each other, and save the parsonage as a building belonging to an 'institution of purely public charity.' The use to which the property is devoted determines its right to exemption, under any clause of the section."

In *Taylor, Adm'r., v. Protestant Hospital Ass'n,* 85 Ohio St., 90, 96 N. E., 1089, 39 L. R. A., (N. S.), 427, and *O'Brien, Treas., v. Physicians' Hospital Ass'n.,* 96 Ohio St., 1, 116 N. E., 975, L. R. A.. 1917F, 741, we find that one of the essential elements of consideration by the court in determining the question of public charities is that the institutions were open to the entire public indiscriminately, and without regard to creeds or religion.

In 85 Ohio St., supra, the court refers to 46 Ohio St., 93, 18 N. E., 496, 1 L. R. A., 754, 15 Am.

St. Rep., 556, *Dunn* v. *Agricultural Society,* as follows:

"In *Dunn* v. *Agricultural Society* the fair grounds were kept and the fair conducted not as a thing free to the public; Judge Williams in declaring the judgment of the court says as to the rule of exemption from liability that 'it has no application to corporations called into being by the voluntary action of the individuals forming them for their own advantage, convenience or pleasure.' "

It is our judgment, therefore, that the first assignment of error, to wit, that the defendant is a charitable corporation, or a public charity, and therefore not liable, is not well taken, and consequently the question as to whether the limit of liability goes beyond the question of incompetent employees is immaterial in the instant case.

Coming to the second ground of error, to wit, Did the court commit prejudicial error in the admission of the ordinances offered in evidence for the purpose of proving liability against the defendant for violation of said ordinances with respect to the metal-covered door, which plaintiff opened when he entered the dark elevator shaft, resulting in his injury?

The plaintiff, to sustain his claim for liability, offered, under objections and exceptions, Sections 1461, 1480, 1482, and 1489 of the building code of the city of Cleveland, applying to elevator shafts, safety gates, and doors. These sections are part of a general code intended, not only to meet the situation as to new constructions, but as to structures already in existence at the time of the passage of the ordinance. This intent and purpose is

plain from a reading of the sections, and it is obvious that the intent and purpose of the legislative body was to obviate reconstruction of old buildings as much as possible, in order to prevent unreasonable inconvenience and expense. Said sections read as follows:

"Section 1461. *Existing Elevators to be Equipped.* Any person or persons, company or corporation, having charge of any building in which any elevator is or may be in use shall equip such elevator with the devices or appliances required in subdivision C, and keep the same in good working order and repair; and it shall be unlawful for any person or persons, company or corporation to erect, use or operate, or cause or permit to be erected, used or operated, in any building within the city of Cleveland, any freight or passenger elevator unless the same be equipped with the devices and appliances as provided in the aforesaid subdivision."

"Section 1480. *Elevator Fire Doors and Safety Gates.* All elevators inclosed with brick walls or in fireproof shafts shall be provided with fireproof frames and doors. Said doors shall be provided with an approved device or system which will automatically close the opening in the event of fire. And in addition to said automatic fire doors, the elevators shall be provided with automatic opening and closing hatch gates, to protect the approach to the elevator when doors are open."

"Section 1482. *Hoists and Elevators: Well Holes to be Guarded.* In all buildings in the city of Cleveland in course of construction, and in all buildings having elevators intended for freight lifts only, and not constructed, protected and

operated as required for passenger elevators, it shall be unlawful to use hoists and elevators for hoisting materials, etc., in any such building or buildings unless the well holes or openings for such elevators or hoists on each and every floor of the building shall be closed with guard rails composed of boards placed six inches apart to a height of five feet, with a gate or door swinging outward from the elevator, and such other safety or equivalent appliances as shall be necessary for the protection of life or limb."

"Section 1489. *Doors.* All doors approaching elevator shafts shall have safety locks of approved make, so that said doors will be closed when the elevator car is not at the floor where said doors are located."

Another conclusion easily inferred from the sections above quoted is that by reason of the character of old structures it would be a physical impossibility to impose the requirements pertaining to new structures upon the old ones, because of the organic changes in superstructure and architecture. This attitude of the legislative mind appears to be embodied in Section 1493 of the Building Code, entitled "Protection of Well Holes, Elevator Shafts, and Open Courts in Existing Buildings." This section was offered by the defendant, and its bearing upon the previous sections quoted is a determining factor with respect to the action of the court below under this assignment of error. Said section reads:

"Section 1493. Owners of all buildings, erected prior to the passage of this division, containing elevators, hatches or well holes, elevator shafts or open courts, shall, upon written notice from the

commissioner of buildings so to do, properly and sufficiently guard and protect such elevator hatches, well holes, or elevators, with gates or guards, so as to avoid danger to human life, and said gates or guards shall be closed on all floors except when cars are in actual use.''

The plaintiff specially relies upon the violation of Section 1489 above set forth relating to doors. It will be noted that that section says that all doors approaching elevator shafts shall have safety locks of approved make, so that said doors will be closed when the elevator car is not at the floor where said doors are located. It does not say that the door shall remain locked. It requires safety locks of such a make and approval that by their use doors approaching elevator shafts will be closed when the elevator is not at the floor where the doors are located. That is an entirely different ordinance from one which requires that the doors remain locked when the elevator car is not at the floor where the doors are located. In the instant case it must be borne in mind that, when plaintiff opened the door to the elevator shaft where he met his injury, the purpose of the legislative body in supplying the safety locks had been complied with, for the door was closed. Thus it is not so much a question of a door with or without safety locks as it is of a door that will be closed, as the plaintiff found the door in question. The intent of supplying safety locks is clearly expressed in the language ''so that said doors will be closed.''

From any aspect of the record the injury did not result from the presence or absence of locks. but it resulted because the plaintiff opened a closed door. The door itself, when the plaintiff

found it, was not a dangerous instrumentality or a nuisance, but was absolutely safe. When it was opened it was still safe, and the injury only happened because plaintiff, who found it closed, opened it, and entered impenetrable darkness, and unfortunately, it was an elevator shaft, and the injury resulted. The plaintiff says that he could not see one foot in front of him, and yet he opened the door and entered the darkness.

It is claimed by defendant's witnesses that there was a sign on the door at the time of the accident, and prior thereto, which said "Danger," and warned him not to enter. The great weight of the evidence is to the effect that this warning was on the door at the time plaintiff opened it, and, while it is true that he himself says that he did not see the sign, and would not say that it was not there, yet a policeman who examined the premises after the accident positively testifies that the sign was there.

This status releases the plaintiff from the charge of contributory negligence *per se,* and thus with respect to that warning the question became one of fact for the jury. However, when the plaintiff admits that he found the door in question closed, and that he opened it, and immediately found it so dark that he could not see a foot in front of him, and yet entered the elevator shaft, no proof is offered to remove this presumption of contributory negligence, and, therefore, as to the warning given by the impenetrable darkness itself, the situation remains unchallenged, and, in our judgment, under the Ohio doctrine, the plaintiff is chargeable with contributory negligence. This doctrine has been laid down by the Court of Appeals of the Fourth

Appellate District in declaring the rule that, where one drives an automobile with the fog in front of him, he is bound so to control his car that he can stop within the limits of his light, and that to go forward on a highway without being able to see is such an act as would defeat recovery.

Darkness is nature's own warning to arouse the natural instinct of self-protection, the first law of nature. Indifference to such an instinct is a clear violation of a fundamental physical law, and should be, under circumstances like those of the instant case, more impressive and convincing than a sign "Danger," nailed on the door. Darkness was a danger in the instant case that stood gaunt and menacing in front of the eyes of the plaintiff, and under such circumstances as appear in this record to enter the shaft is, in our judgment, such contributory negligence as should prevent a recovery in law. To hold a contrary doctrine would be to declare that in times and places of danger a person is not responsible for the proper use of his faculties, and so to decide would be to say that one is not held to the exercise of reasonable care and prudence.

Upon the conduct of plaintiff while at the door, we reproduce his own language as follows:

"Q. You could see it was a metal-covered door? A. Yes.

"Q. What do you say, was there a sign on that door? A. I didn't see no sign, no sir.

"Q. Do you say there was no sign? A. I don't say that there were not, but I didn't see any sign.

"Q. Did you look for one? A. I did not.

"Q. When you opened the door did you see

ahead of you? A. I didn't see anything; it was dark.

"Q. Pitch dark, was it? A. Yes, sir.

"Q. Do I understand that you took hold of this door with your right hand? A. Yes, sir.

"Q. Walked up to it, pulled it open? A. Yes.

"Q. And stepped through? A. Yes, sir.

"Q. Without seeing what was ahead of you? A. Yes, sir. I stepped up, grabbed the door, and stepped with my next foot right into the—

"Q. It was dark? It was dark there? A. Yes, sir.

"Q. Couldn't see a foot ahead of you, could you? A. No, sir.

"Q. If there had been a stairway there, you would have fallen downstairs, wouldn't you? A. Presumably I would."

To support our views upon the question of contributory negligence *per se,* we cite the following cases: *B. & O. Ry. Co.* v. *McClellan,* 69 Ohio St., 142, 68 N. E., 816; *C., C., C. & St. L. Ry. Co.* v. *Cornwall,* 14 C. C. (N. S.), 209, 24 C. D., 124; *C., C., C. & I. Ry. Co.* v. *Elliott,* 28 Ohio St., 340; *Pittsburgh & W. Ry. Co.* v. *Ackworth,* 10 C. C., 583, 6 C. D., 622; *Grant* v. *Pittsburgh & W. Ry. Co.,* 10 C. C., 362, 6 C. D., 516; *Penn. Co.* v. *Alburn,* 3 C. C. (N. S.), 104, 13 C. D., 130; *Leber* v. *Kelley Island Lime & Transportation Co.,* 21 C. C., 773, 11 C. D., 568; *Puccini* v. *City of Cincinnati,* 3 N. P. (N. S.), 362, 15 O. D. (N. P.), 308; *Clev. Elec. Ry. Co.* v. *Wadsworth,* 1 C. C. (N. S.), 483, 15 C. D., 376; *Adams* v. *City of Zanesville,* 14 Ohio App., 53; *Schaefler* v. *Sandusky,* 33 Ohio St., 246, 31 Am. Rep., 533; *Arras, Admr.,* v. *B. & O. Ry. Co.,* 20 C. C. (N. S.), 387, 26 C. D., 214.

Adverting again to Section 1489 of the ordinances above quoted, and from which subject we digressed in order to interpret that section by applying the specific facts in the case, the plaintiff asserts that Section 1493 of the ordinances which defendant offered in evidence, and which the court excluded from the consideration of the jury, applies to the issues, and that its force and effect make inapplicable, under the record, the alleged violation of Section 1489, which plaintiff alleges as an essential basis of negligence.

It is conceded by the stipulation that Sections 1460 to and including 1497 of the ordinances of the city of Cleveland were in effect on and prior to the 14th day of January, 1925, the date of the injury, and it is further so agreed that the building where the accident happened, together with the elevator system, had been constructed and was in operation prior to the enactment of any of the ordinances offered in evidence.

It is also a conceded fact in the record that under Section 1493, upon which defendant relies as one of its grounds for nonliability, no written notice had been received from the commissioner of buildings by the defendant relative to guarding and protecting the elevator shaft. The contrary, however, appears, that at and prior to the accident a certificate of proper compliance with the ordinances with respect to the elevator shaft had been issued to the defendant by the proper authorities.

The plaintiff claims that Section 1493, which says in substance that the owners of all buildings erected prior to the passage of this division containing elevator shafts shall upon written notice

from the commissioner of buildings properly and sufficiently guard and protect the shafts, does not apply to Section 1489, upon which reliance is had by the plaintiff.

This position is untenable from any language of exemption or exclusion, express or implied, in Section 1493. It is obvious that the language is unambiguous, and therefore interprets itself, and it is equally clear that if the intent of the legislative body was to exclude Section 1489, by the passage of Section 1493, it would have said so in language. It did not do so. There is no apparent ground for selecting as exempt Section 1489 and in not selecting 1480 and 1482, relating to elevator fire doors, safety gates, hoists, elevators and well holes. To exclude Section 1489 in the instant case the exclusion must be based upon some provision in the ordinance either express or implied. If Section 1480 or 1482 were equally in issue with Section 1489, the same reason would exempt these two sections as would exempt Section 1489. Such a conclusion, however, would be arbitrary, because founded on nothing legislative of a basic nature. The language of Section 1493 has no modifications, exemptions, or exclusions. It includes all owners of all buildings erected prior to the passage of the act containing elevator shafts, and the instant case is a building with an elevator shaft, and Section 1489 specifically applies to elevator shafts. There is no more reason for exempting one of the sections than another of the sections, or all of the sections, because the exclusion is not founded in the legislative act, and the authority cannot be derived therefrom by any inference under the rules of construction.

One well-known rule of statutory construction is that general language in a group of statutes is to be restricted in its interpretation and application when it would otherwise conflict with certain specific provisions of later statutes. Sustaining this position we quote the following authorities: *State, ex rel. Commrs. of Knox Co.,* v. *Blake,* 2 Ohio St., 147; *Woodworth* v. *State,* 26 Ohio St., 196; *L. S. & M. S. Ry. Co.* v. *Elyria,* 14 C. C. (N. S.), 364, 22 C. D., 449; *Doll* v. *Barr,* 58 Ohio St., 113, 50 N. E., 434; *Northwestern Ohio Natural Gas Co.* v. *Tiffin,* 59 Ohio St., 420, 54 N. E., 77; *Weirick* v. *Mansfield Lumber Co.,* 96 Ohio St., 386, 117 N. E., 386; *Mutual Electric Co.* v. *Pomeroy,* 99 Ohio St., 75, 124 N. E., 58; *State, ex rel. Myers,* v. *Industrial Comm.,* 105 Ohio St., 103, 136 N. E., 896.

From this reasoning it is our judgment that the trial court committed prejudicial error in refusing to withdraw the ordinances from the jury, under the facts in the case, and in refusing to give defendant's requests 1 and 2, which are as follows:

"(1) I instruct you that the provisions of Sections 1461, 1480, 1482 and 1489 of the ordinances of the city of Cleveland, heretofore offered by the plaintiff, do not apply to this case, and you will disregard any and all claims of negligence made by the plaintiff against defendant based on such ordinances.

"(2) I instruct you that, under Section 1493 of the ordinances of the city of Cleveland, the defendant, in the absence of written notice from the commissioner of buildings so to do, was not required to have the elevator door locked, and you will disregard all claims of negligence of the plaint-

iff based upon the ordinances of the city of Cleve-land.''

We have considered the second assignment of error and the fourth assignment of error together, for the purpose of interpreting the ordinances, and there is but one remaining assignment of error, to-wit, that the court erred in permitting evidence concerning a prior accident in the same elevator. As to this latter assignment of error we do not think that it is prejudicial, for the reason that the court took such careful pains to exclude the subject from the consideration of the jury that it had no serious effect in the instant case.

Holding these views, the judgment of the lower court is hereby reversed, and judgment is entered in favor of plaintiff in error.

*Judgment reversed.*

LEVINE, J., concurs.

VICKERY, J., not participating.