Helen C. Pollard, Appellee, v. Broadway Central Hotel Corporation, Appellant.

Opinion filed January 23, 1933.

JOSIAH WHITNEL, H. L. BROWNING and J. R. MC-MURDO, for appellant.

WM. BAIRD & SONS and POPE & DRIEMEYER, for appellee.

MR. JUSTICE EDWARDS delivered the opinion of the court.

The Broadview Hotel, in East St. Louis, is situated on Broadway street, facing south. It extends easterly and westerly from Fourth to Fifth streets, has two public entrances, the main one on Broadway, and the other on Fourth street; the latter opens into a vestibule, thence into a corridor leading to the lobby of the hotel. This corridor, about 60 feet in length and 12 feet wide, is upon a lower level at the street than at the lobby floor, the difference being met by two step-ups, each about six inches high, the first located 20 feet from the street entrance, and the second about 16 feet further toward the lobby.

The Broadway entrance is about 25 feet wide, and about the middle of the building, from east to west; opens into a small vestibule off the main hotel lobby, which is a large room approximately 75 feet square; the desk is at the north side of the lobby, and about due north of the Broadway entrance. The elevators

are in the southwest corner of the lobby, and to the south of the corridor leading to the Fourth street entrance.

The ceiling of the main lobby is about 25 feet from the floor, while the passageway to Fourth street, as shown by the photographs in evidence, is about one-half as high. The lobby was illuminated by ceiling lights on either side of the passageway, from the desk to the door, on Broadway; also by two suspended chandeliers, one directly in front of the desk, the other near the Broadway entrance. The corridor from the lobby to Fourth street was illumined by two suspended lights, which were turned off each night at 11 o'clock, and at which time the door to Fourth street was locked, and so remained until the following morning.

On October 7, 1930, plaintiff, in the late afternoon, en route by motor from Omaha, Neb., to Atlanta, Ga., in company with her daughter, three grandchildren, and a maid, drove up to the Fourth street entrance; plaintiff entered by that door, passed through the corridor to the office, registered, retraced her steps, via the passageway, to the street, parked her car, and again entered the hotel through the same aisle. She left a call for five o'clock the next morning; being called, pursuant to her request, she, before daylight, went to the desk in the lobby, paid her bill, and requested the bell boy to get her bags; at this time the lobby was lighted, as well as the Broadway entrance. The clerk, according to custom, had turned off the lights in the passageway, leading to Fourth street, at 11 o'clock the previous evening, and had locked the street door. At the time plaintiff came to the office in the morning, the door was still locked, the lights turned off, and the corridor in darkness, except for such rays of light as might penetrate its entrance, coming from the ceiling lights which were 25 feet above the floor.

The testimony of the clerk and bell boy is to the effect that when plaintiff's bags were brought down, they were placed in the Broadway entrance, and that she then started for such doorway; the clerk testifying that he watched her, and saw her enter the vestibule leading out onto Broadway, after which his attention was diverted, and he did not again see her until after the accident, hereinafter to be described.

Plaintiff denies that she was in the Broadway vestibule, and states that after she directed her bags be brought down, she returned to the room to inform the other members of her party that they were about to start; that she returned to the lobby, started through the Fourth street corridor, toward the outer door, fell at the first step-down, sustaining a fracture of the left arm or wrist, which injury forms the subject matter of this suit; that the bell boy, hearing her fall, came to her assistance, turned on the lights, and helped her to the office. She further testifies that when she fell, it was dark; that when she started for the corridor, she did not notice whether or not it was lighted, and that the lights were not on when she fell.

Plaintiff brought suit against the defendant to recover damages for the injury sustained, upon the theory that it was the duty of defendant to maintain the corridor in a reasonably safe condition; that it failed so to do, in consequence of which she sustained the injury referred to, and that at the time she was in the exercise of due care for her own safety. A jury, upon the trial, found for plaintiff, and awarded her $9,000 as damages; the court required a remittitur of $1,500, and entered judgment for $7,500, from which defendant has appealed.

One of the controlling questions in the case is whether plaintiff, at the time of the accident, was using due care for her own safety. There being no charge of wilful or wanton conduct, it was incumbent upon

plaintiff to aver, and affirmatively to prove, that at the time she sustained her injury, she was in the exercise of ordinary care for her own safety. *Illinois Cent. R. Co. v. Oswald*, 338 Ill. 270; *Wilson v. Illinois Cent. R. Co.*, 210 Ill. 603. The ordinary care which she must use is that caution which a reasonably prudent person would take to avoid injury, under like circumstances. *Chicago & Alton R. Co. v. Adler*, 129 Ill. 335. If the plaintiff has failed affirmatively to show that she was, at such time, using such degree of care and caution, a recovery in her favor would not be warranted.

It thus appears that plaintiff had a perfectly safe and well lighted way to the Broadway street entrance; that there was no necessity that she should attempt to go through the unlighted corridor to Fourth street, and no reason has been shown why she did so. She testified that, as she approached the entrance to the corridor, she did not notice whether it was lighted; yet she voluntarily entered the passageway. Whether so confident of her steps as to be indifferent to their course or termination, or whether mentally preoccupied and oblivious to her surroundings, she apparently entered without a thought of consequences which are likely to attend walking through darkened passageways.

The corridor was dark; its lights were turned off, and the only possible illumination which could reach it were the rays from the ceiling lights of the lobby, 25 feet above the floor, and probably 10 or 12 feet above the ceiling of the passageway, and which, as a physical fact, could not penetrate beyond the entrance to any considerable distance. She had, about 12 hours previously, gone over these same steps at least three times, and knew, or should have known, of the two step-downs; moreover, the darkness of the corridor was, of itself, a warning to exercise caution. As was said in *Central Pub. House v. Flury*, 25 Ohio App. 214,

157 N. E. 794, "darkness is nature's own warning to arouse the natural instinct of self-protection, the first law of nature."

As above observed, the exit to Broadway street was lighted; that to Fourth street, unlighted. This fact, of itself, should have charged plaintiff with asking whether the latter was subject to use, by the guests of the hotel, at the time. A person of ordinary prudence and caution, under such circumstances, would have made inquiry concerning same, before assuming the hazards of walking through the corridor. The darkened condition of the passageway called for ascertainment, by plaintiff, that same was safe, before she entered, and justified no presumption that she might traverse it in security, without first seeking to learn such was the fact. Had she but inquired of the clerk or bell boy, as we think a reasonably cautious person would have done, either the way would have been lighted for her, and the door unlocked, or she would have been told the corridor was not then for public use, and directed to take the other exit.

In our opinion that proof does not show that plaintiff exercised ordinary caution for her own safety, in the face of circumstances which would have been a warning to one of ordinary prudence, but rather proceeded upon her own initiative, and assumed the risks of her voluntary action.

While the question of due care on the part of a plaintiff is ordinarily one of fact for the jury, yet when, as in this case, the facts bearing upon such matter of her care and caution, rest solely upon her own testimony, and the attendant circumstances that are not in dispute, as to whether she was exercising such care, then in such cases the court rests under the obligation of determining, as a matter of law, whether she in fact used ordinary caution for her own safety. *Illinois Cent. R. Co. v. Oswald, supra; Beidler v. Branshaw,* 200 Ill. 425.

Defendant, both at the close of plaintiff's case, and at the close of all evidence, asked the court for a directed verdict in its favor. Considering all the evidence, as favorably to plaintiff as is warranted, we are of opinion that she failed affirmatively to prove that she was in the exercise of ordinary care for her own safety. This was a vital element of her case, and without it she has no right of recovery. The trial court should have directed a verdict in favor of defendant.

For the above reason the judgment is reversed.

*Reversed with finding of fact.*

Finding of fact: The court finds, as a fact, that the plaintiff was not, at the time of her injury, in the exercise of ordinary care for her own safety.