**HANOCK v. ECK et al.**

No. 9866.

United States Court of Appeals, Seventh Circuit.

July 20, 1950.

Rehearing Denied Sept. 11, 1950.

Harold O. Mulks, Chicago, Ill., for appellant.

Julius E. Solomon, Chicago, Ill., for appellee.

Before KERNER, FINNEGAN, and SWAIM, Circuit Judges.

KERNER, Circuit Judge.

This appeal is from a judgment for plaintiff in a suit under the Emergency Price Control Act of 1942 as amended and extended, 50 U.S.C.A.Appendix, § 901 et seq., against two defendants to recover over-ceiling rentals and a bonus alleged to have been paid by plaintiff for the rental of certain housing accommodations.

There is no serious dispute over the basic facts that plaintiff paid the sum of $266.67 over and above the maximum rental established for the apartment involved and that he paid $300 as a bonus for the rental of the apartment. The questions raised are as to the sufficiency of the evidence to sustain the judgment against Mrs. Eck; the legal effect as to Mrs. Gaebel of the entry of a default judgment only against Mrs. Eck, subsequently vacated on the latter's petition; and whether plaintiff's asserted cause of action was in fact grounded on entrapment.

The complaint named Julia Eck and Flora Gaebel as defendants and alleged that Eck "holds the legal title to the property * * *" and that Gaebel "is either the agent for the defendant, Julia Eck, or is the beneficial owner of the property * * *." It further set forth that defendants, on or about December 10, 1946, rented an apartment to plaintiff at a rental of $65 a month under a lease for a period from January 1, 1947 to December 31, 1947; that as a condition of the renting, defendants required plaintiff to pay to them a bonus of $325, and that the maximum rent established for the apartment was $40.

Following service on both defendants and appearance by neither, the matter came on for *ex parte* hearing, and on February 6, 1948, the court entered judgment. After reciting that there had been personal service on both defendants but both were in default in that neither had filed appearance,

and that evidence had been taken in open court, it found that defendant Eck held the legal title to the property involved and rented an apartment therein to plaintiff by lease for a rental in excess of the maximum established under the Emergency Price Control Act of 1942, and therefore rendered judgment against her.

On September 14, 1948, the court granted a motion filed on July 26 by Eck with a supporting affidavit, to vacate the judgment of February 6, and thereafter the matter was set for regular hearing. At this hearing plaintiff and defendant Eck were present in person and by counsel; counsel representing Gaebel was also present throughout the hearing but did not ask leave to enter appearance or file answer, claiming that his client was no longer a defendant in the cause for the reason that the entry of the default judgment of February 6 against Eck operated as a judgment of dismissal as to her. Mrs. Gaebel, however, was present as a witness, being called upon by each party to testify.

Upon hearing all the evidence offered by both parties, the trial judge found that on December 10, 1946, Mrs. Eck held title to the property and Mrs. Gaebel had possession of the apartment here involved, and that they conspired to and did rent the apartment to plaintiff under lease for a year at $65 a month although the maximum rental therefor was $40 a month. He further found that plaintiff paid defendants $266.67 in excess of the maximum for the period from December 11, 1946 through October, 1947; that plaintiff paid defendants $300 as a condition precedent to the renting of the apartment and that there was connivance and conspiracy between the two defendants in exacting that bonus and in compelling plaintiff to pay a sum in excess of the established monthly rental. He therefore rendered judgment for plaintiff against both defendants for twice the amount of the overcharges and of the bonus, and for $450 attorney's fees.

Defendants contend that the record does not sustain the judgment against either of them; that it is erroneous as to Mrs. Gaebel because the court lost jurisdiction over her after entry of the judgment against Mrs. Eck, and reopening of the cause on the latter's petition did not revive the cause as to Gaebel; that it is erroneous as to Mrs. Eck for the reason that there is no evidence whatever that she ever demanded or received any of the payments alleged to constitute overcharges under the provisions of the Price Control Act; and that there is no evidence to support the court's finding of connivance and conspiracy between her and Mrs. Gaebel. They further contend that in the event that this court finds that the judgment is erroneous as to either of them, it must be reversed as to both for the reason that it is a unit, binding both of them jointly, and reversal as to one, under Illinois law, operates as a reversal as to both.

In support of their assertion of error as to the judgment against Mrs. Gaebel, defendants rely upon Robinson v. Brown, 82 Ill. 279; Bakula v. Schwab, 167 Wis. 546, 168 N.W. 378; James v. Evans, 3 Cir., 149 F. 136, and other cases. We have examined all the cases cited and deem it unnecessary to discuss them beyond stating that none is authority for the proposition stated. Here both defendants were in default; the court so found, but entered judgment against only one; that one successfully petitioned to have the judgment vacated and the cause reopened; the other chose not to join in the reopened proceeding, as would no doubt have been permitted had she asked leave to file appearance and answer instanter; instead she stood on the supposed bar of further proceedings against her arising out of the vacated judgment. In colloquy preceding the hearing of evidence in the cause the court indicated his view that the vacating of the judgment and reopening of the cause disposed of counsel's argument that the entry of the judgment against the other defendant operated as a dismissal as to the one against whom it was not directed. Under the circumstances we are convinced that the court correctly held that the case should be retried as to both defendants, and that inasmuch as Mrs. Gaebel did not then ask to be relieved of the default and permitted to plead and be heard, she could not later complain that she had not been heard in defense of the action against her—having become in default by her failure to file appearance,

she remained in default throughout the proceedings and was not entitled to obtain a benefit from the fortuitous circumstance that the judgment originally entered upon the default of both herself and her fellow-defendant did not run against herself.

■ The issue raised by Mrs. Eck is one of fact, and it is necessary for us to consider the evidence introduced on the hearing in order to determine whether or not she was liable as charged in the complaint for the violation of the Act, keeping in mind that under Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., the findings of the District Court are not to be set aside unless clearly erroneous, Tornello v. Deligiannis Brothers, 7 Cir., 180 F.2d 553, and that where the evidence is in dispute, the prevailing party is entitled to have it viewed on review in the light most favorable to him. Grandin Grain & Seed Co. v. United States, 8 Cir., 170 F.2d 425. See also Cashman v. Mason, 8 Cir., 166 F.2d 693, and Cleo Syrup Corp. v. Coca-Cola Co., 8 Cir., 139 F.2d 416, 150 A.L.R. 1056, to the effect that the appellee is given the benefit of all favorable inferences reasonably to be drawn from the evidence, and Tennessee Coal, Iron & R. Co. v. Muscoda Local 123, 5 Cir., 137 F.2d 176, affirmed, 321 U.S. 590, 64 S.Ct. 698, 88 L.Ed. 949, 152 A.L.R. 1014, that even where there is no dispute about the facts, if different reasonable inferences may fairly be drawn from the evidence, an appellate court is forbidden to disturb the findings based on such inferences unless they are clearly erroneous.

Bearing these principles in mind we turn to the evidence. In December, 1946, Mrs. Eck was the owner of an 18 apartment building, and Mrs. Gaebel, who had known her for over 15 years, was a tenant in one of the apartments which she had occupied since 1944, under lease in the beginning but continuing on after its expiration without any lease. The building was registered under rental regulations for housing, and the maximum rental fixed for the apartment in question was $40 a month. A few days prior to December 10, 1946, plaintiff's wife placed the following advertisement in the North Shore Star: "$300.00 reward. Desperately need 3 to 5-room apartment. Phone number Sunnyside 5196." In response to this advertisement Mrs. Gaebel telephoned and arranged to show them the apartment she then occupied which was then furnished with her own furniture. Plaintiff, his wife, and his father inspected the place, and Mrs. Gaebel at that time told them that the ceiling rent was $65, but she wanted to rent it to them furnished for $85 a month. They agreed, however, that she should remove her furniture and they would take the place unfurnished at $65 a month, and plaintiff agreed to and did give her $25 to pay for the removal of the furniture. Mrs. Gaebel testified that she told plaintiff she would talk to Mrs. Eck about letting plaintiff lease the apartment for a year, and that she did discuss the matter of the year's lease with Mrs. Eck. On December 10, she took plaintiff and his wife to Mrs. Eck's apartment. There the latter signed the following letter, addressed to plaintiff: "This is to advise you that I have consented to the making of a lease by Flora Gaebel to you for the apartment I have rented to her which is 2nd apartment at 4362 No. Kenmore Ave. * * * for a period of one year from January 1st 1947 and that the lease shall be good for 1 year."

Mrs. Eck testified that Mrs. Gaebel had asked her to give her consent to let someone live in her apartment while she was out of Chicago and that she signed the paper above mentioned to give that consent, admitting, however, that she had read it before she signed it. She denied knowing that there was to be a written lease, or that there had been any conversation in her apartment as to the terms of the renting, and denied knowing the amount plaintiff was paying for rent. Plaintiff and his wife both testified, on the other hand, that Mrs. Eck asked to see the lease and read it before she signed the letter of consent. Plaintiff testified that he asked to have a provision for renewal of the lease included therein, but Mrs. Eck "decided that she did not want it renewed, right then I mean," and sometime later, in January or February, when he asked for a place for a baby buggy, Mrs. Eck told him she did not want children

in the building and would not renew the lease when it expired.

When plaintiff and his wife moved into the apartment both Mr. and Mrs. Eck were at work in it, Mr. Eck painting a closet, and Mrs. Eck washing a wall and cleaning.

Plaintiff gave Mrs. Gaebel three checks totalling $325. These, Mrs. Gaebel testified, were paid for her trouble in moving her furniture out, and "for securing a lease for him." Admittedly these payments were made to Mrs. Gaebel outside the presence of Mrs. Eck. And plaintiff paid his rent of $65 a month to Mrs. Gaebel who in turn paid rent to Mrs. Eck, $40 a month until June 1, 1947, and $46 a month thereafter, the increase being a 15% one provided by a voluntary lease entered into between Mrs. Eck and Mrs. Gaebel in November 1947. Both defendants testified that Mrs. Gaebel had never paid anything to Mrs. Eck but the $40 or $46 a month. Plaintiff's wife, however, testified that Mrs. Eck asked her once for the $65 rent.

In June 1947, plaintiff wrote Mrs. Gaebel complaining that he was having trouble with Mr. and Mrs. Eck who insisted on entering his apartment during the absence of himself and his wife under the pretext of "inspecting" the apartment. And plaintiff testified that on one occasion he had protested to Mrs. Eck about entry into the apartment in their absence, and she had told them she had a right to get in any time she wished.

At the close of all the evidence the trial judge stated that he had observed the witnesses on the stand and had listened very attentively to all the testimony and was convinced that the plaintiffs were telling the truth, and that in his opinion there was conspiracy and connivance between Mrs. Eck and Mrs. Gaebel which constituted violation of the law.

■ We think the evidence fully supports the finding of the judge that there was connivance between defendants, in fact that is the only reasonable inference to be drawn from the evidence set forth above. Mrs. Eck permitted Mrs. Gaebel, whose tenancy was one from year-to-year, to execute a lease to plaintiff for a fixed term of a year, and there is credible though disputed evidence that she read the lease, hence had full knowledge of all its terms and that the rental therein provided was in excess of the maximum established for the premises involved; she prepared the apartment for plaintiff's occupancy; after plaintiff took possession under the lease, she continued to exercise dominion over it, entering without his consent. We think these facts established active participation by Mrs. Eck in the entire rental transaction, sufficient to charge her with liability for the overcharges involved therein. To absolve her from that liability would amount to permitting a landlord to evade the provisions of the Act by using a dummy to execute a lease to his property. Under these circumstances, we consider it immaterial that plaintiff paid all overcharges to Mrs. Gaebel and did not establish actual receipt of any part of such overcharges by Mrs. Eck.

■ Defendants have also urged entrapment as a defense to the claim, arising from the fact of the advertisement to pay $300 for an apartment. The court took this into consideration in fixing the amount of the damages. We think that in the absence of evidence indicating that the offer of a bonus was made in bad faith for the purpose of laying a foundation for an overcharge claim, the payment of a bonus or other overcharge does not constitute a waiver of the statutory right of recovery for violation of the Act. Compare O'Brien v. Brown, 403 Ill. 183, 85 N.E.2d 685. This appears to us to be consistent with the decisions under the Price Control Act relied upon by defendants on the issue of entrapment. See Tropp v. Great Atlantic & Pacific Tea Co., 32 A.2d 717, 21 N.J.Misc. 205; Dunakin v. Southwestern Consumers Co-op. Ass'n, 49 N.M. 69, 157 P.2d 243. We do not consider other cases cited on the subject to be in point.

Judgment affirmed.

FINNEGAN, Circuit Judge, dissenting.

It is my judgment that the findings of fact as to Julia Eck are clearly erroneous, and that the record fails to adequately support a judgment against her. "A finding is

'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., et al., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746.