Mildred SNORGRASS, administratrix with will annexed of the estate of Edward B. Goldthwaite, deceased, Plaintiff-Appellee,

v.

SEARS, ROEBUCK AND CO., a New York corporation, Defendant-Appellant.

No. 12775.

United States Court of Appeals Seventh Circuit.

March 1, 1960.

Burton Y. Weitzenfeld, Chicago, Ill., Edward J. Kahn, Chicago, Ill., for appellant.

O. L. Houts, Chicago, Ill., Raymond G. Barnett, Kansas City, Mo., for appellee.

Before SCHNACKENBERG and KNOCH, Circuit Judges, and MERCER, District Judge.

SCHNACKENBERG, Circuit Judge.

Mildred Snorgrass, administratrix with will annexed of the estate of Edward B. Goldthwaite, deceased, brought this action against Sears, Roebuck and Co., a corporation organized under the laws of New York, under the Wrongful Death Act of Illinois, § 1 et seq., ch. 70, R.S.Ill., 1955. An answer and an amendment thereto having been filed by defendant, the case was tried in the district court without a jury. The court entered findings of fact and conclusions of law, found the issues in favor of plaintiff and entered judgment for $20,000 and costs against defendant, which has appealed.

Decedent, an engineer, was one of three employees sent by the Marley Company on Saturday, May 28, 1955, to repair the cooling tower on the roof of defendant's building known as the Administration Annex in Chicago. No business was being conducted in the building at the time.

Defendant's assistant fire marshal assigned one Kalinowski as an escort. He led the men to a freight elevator where he took a key hanging on the wall and opened the doors, replaced the key, turned on the elevator light, admitted the men, closed the doors and placed the elevator in motion by pulling the cable. When the elevator was level with the fifth floor the escort stopped it by taking hold of the cable, and then he opened the doors. Leaving the doors open Kalinowski led the men into a stairwell, then into a fan room, which opened onto the roof where the cooling tower was located. The escort advised that when the men went to lunch, or came and went, they could come and go the same way.

The elevator was what is known as a rope geared hydraulic elevator, which is placed in motion when the operator pulls a rope or cable. It is stopped by the operator taking hold of the rope or cable. When the elevator is stopped at a floor it is necessary that it be centered by lining up the yellow marker on the rope with the yellow marker on the wall, which places the elevator in neutral at floor level. This is necessary to prevent its creeping upward or downward. This is not due to any defect in the elevator but is a characteristic of the type of elevator involved. In establishing the neutral position, there is a leeway of about four inches.

At about noon the three men went out for lunch. In doing so they first went to the elevator in question on the fifth floor but found the doors closed and they used the stairway to the first floor. Upon their return from lunch, they went to the same elevator on the first floor. Masterson, one of the men, took the key from the wall, opened the doors, replaced the key, turned on the elevator light, admitted the three men, closed the doors, operated the elevator to the fifth floor, stopped it there, opened the doors, and left them open as the three men left the elevator and went to their work.

At about 6 P.M., Masterson and deceased quit work and walked through the dimly lighted building to the freight elevator location on the fifth floor. They were able to see that the doors were open as they were when they left the elevator after lunch. Deceased, while bracing himself on the door jamb, felt for the elevator with his left foot, overbalanced and fell to his death in the shaft. The elevator had risen above the fifth floor without the knowledge of the deceased.

Among other things, the district court found that the deceased exercised due care for his own safety at and immediately prior to the occurrence, and was an invitee of defendant; that the defendant negligently failed to exercise reasonable care for decedent's safety, failed to warn him of defects in defendant's premises, failed to keep the premises used by deceased in safe condition; and thereby directly and proximately caused the death of deceased.

When a case is tried without a jury, this court will not ignore the trial court's findings of fact unless they are clearly erroneous, 28 U.S.C.A. rule 52(a). See Lichter v. Goss, 7 Cir., 232 F.2d 715, 719.

It was a reasonable inference from the evidence in this case that the absence of the elevator from the fifth floor at the time of decedent's fatal fall was due to creeping, because there was no evidence of any other cause. In any event the drawing of reasonable inferences from the evidence was peculiarly the function of the district court. In Central Ry. Signal Co. v. Longden, 7 Cir., 194 F.2d 310, 317, we said:

"* * * His is the primary function of finding the facts and choosing from amongst conflicting factual inferences those which he considers most reasonable. Even where there is no dispute about the facts, if different reasonable inferences may be fairly drawn from the evidence, we are forbidden to disturb the findings based on such inferences unless they are clearly erroneous. Gaytime Frock Co. v. Liberty Mut. Ins. Co., 7 Cir., 148 F.2d 694, 696. See also Hanock v. Eck, 7 Cir., 183 F.2d 632, 635; Moths v. United States, 7 Cir., 179 F.2d 824.

"Realizing these limitations upon our functions, we have examined in detail the record submitted in this appeal and, after such examination, find it devoid of anything that would justify us in saying that the findings are erroneous. * * * *"

Defendant owed a duty to decedent, an invitee on its premises, to use due care for his safety, Calvert v. Springfield Electric Light & Power Co., 231 Ill. 290, 293, 83 N.E. 184, 14 L.R.A.,N.S., 782, and particularly to inform him of the creeping action which was characteristic of this type of elevator and which could be overcome only by stopping it in a position where the corresponding marks on the cable and the wall were not more than four inches apart.

For the reasons hereinbefore set forth, the judgment of the district court is affirmed.

Affirmed.

MERCER, District Judge (dissenting).

I regret that I cannot agree with the result reached in the majority opinion.

Upon the basic facts in this case which are not in dispute, I would hold as a matter of law that decedent was guilty of contributory negligence and that judgment should have been entered for defendant. Since the evidentiary facts are not in dispute, "we are free to consider them and to reach our own conclusions, untrammeled by the District Court's findings of fact and conclusions of law." Wigginton v. Order of United Commercial Travelers, 7 Cir., 126 F.2d 659, 661, certiorari denied 317 U.S. 636, 63 S.Ct. 28, 87 L.Ed. 513; Fahs v. Taylor, 5 Cir., 239 F.2d 224, 226, certiorari denied 353 U.S. 936, 77 S.Ct. 812, 1 L.Ed. 2d 759; Casey v. C.I.R., 2 Cir., 267 F.2d 26, 30–31.

As I interpret Illinois law, it is immaterial whether decedent was an invitee with respect to use of the elevator or a licensee only.[1] Under the more stringent invitee rule of duty, defendant's duty to decedent was to have its premises in reasonably safe condition and to have warned decedent of any latent danger therein which was not known to him. Geraghty v. Burr Oak Lanes, 5 Ill.2d 153, 125 N.E.2d 47, 49; Brett v. Century Petroleums, Inc., 302 Ill.App. 99, 23 N.E.2d 359. If decedent had knowledge of the danger which engulfed him, either from defendant's warning or from his own observations, and, notwithstanding that knowledge, placed himself in a position of peril which proximately caused, or was a contributory cause of,

---

1. The only dispute in the evidence relates to the question whether decedent was an invitee with respect to his use of the elevator. Decedent's fellow employees testified that the guide who had conducted them to the Annex Building roof had told them to come and go the same way they had come when they left the building for any reason. The guide testified, as defendant's witness, that he had told the men to come and go the same way, but that they were to use the stairway in ascending to and descending from the fifth floor.

his death, he is chargeable with contributory negligence as a matter of law. Geraghty v. Burr Oak Lanes, supra; Brett v. Century Petroleums, Inc., supra. See Cleary v. Indiana Beach. Inc., 7 Cir., 275 F.2d 543, and cases cited.

If it be assumed that decedent was an invitee with respect to his use of the elevator there is a paucity of evidence to prove invitation—he is chargeable with knowledge of the danger which cost him his life and with action, notwithstanding that knowledge, which constituted a negligent, or even reckless, disregard for his own safety. The undisputed facts as summarized below can lead to no other conclusion in my opinion.

Decedent was an engineer and was one of three employees sent by Marley Co., on May 28, 1955, to repair the cooling tower on the roof of defendant's Administration Annex Building in Chicago. No business was being conducted in the building by defendant on that day. Decedent and his fellow Marley employees had been advised of that fact and were advised that the repair work was scheduled for a time when defendant's employees would be absent from the building. Decedent with the other two Marley employees sought to enter defendant's Administration Building in the early morning on May 28. They were stopped by a guard who advised them that he had no knowledge of their authority to enter the premises. The guard directed them to go into the office of defendant's fire marshal. The three men then left the Administration Building and walked to the office of the fire marshal in another building on defendant's premises. They were advised by that official that one of his assistants would take them to the place where they were to do the repair work. They were also advised at that time that if they needed any assistance, or if they worked late and needed any lights or aid in leaving the building where they were to work, that they should call the fire marshal's office. They were given an inter-company telephone number which they could call if such need arose.

The assigned guide accompanied the three men to the Administration Building, through the basement of that building and through a tunnel which led to the lobby of the Annex Building. From the lobby of the Annex Building, the guide took the men aboard the freight elevator in question and ascended with them from the first floor to the fifth floor of the building. The doors of this elevator could be opened only from the inside, except that the door on the first floor level could be opened from the outside by the use of a key, which was kept hanging on a hook next to the elevator door. There was also placed beside the elevator door on the first floor a sign which read as follows: "Notice, Only Authorized Operators are Permitted to Operate This Elevator. This Rule is Enforced for Your Safety." A sign containing the identical legend was affixed inside the elevator car itself.

Upon reaching the fifth floor, the guide left the elevator with the three men, leaving the elevator door open and the elevator lights burning. The guide then took the decedent and his fellow employees from the elevator down a corridor in the building, through a landing of a lighted stairway, and from there onto the roof of the building where they were to work. After the decedent and his two companions had been escorted to their place of work, the guide returned to the elevator, closed the elevator doors at the fifth floor and descended with the car to the first floor, where he turned off the elevator lights, closed the door and locked the same.

At noon the three Marley employees went to the doors of the elevator on the fifth floor. When they found that the doors could not be opened, they used the stairway to descend to the first floor of the building and went out to lunch. Upon returning from lunch, the three men used the elevator to ascend again to the fifth floor. In doing so, one of the men, Masterson, took the key from

the wall, opened the elevator door, returned the key to its hook, entered the elevator with his two companions, turned on the lights and closed the elevator doors. Masterson operated the elevator to the fifth floor level. There he stopped the elevator, or thought he had it stopped, opened the doors, turned out the elevator light and the three men left the car, leaving the elevator door open and the elevator dark. They then returned to the roof and their work on the tower.

They worked on the tower until approximately 4:30 p. m. At that time, one of them, Johnson, left work. He did not go near the elevator, but, instead, he used the stairway which all three had used at lunch time to descend to the first floor of the Annex Building. At about 6 p. m., Masterson and decedent quit work for the day. They passed by the stairway and went to the elevator. The doors remained open as they had left them when they had returned from lunch. The area of the fifth floor was illuminated by night lights, but the area near the elevator was dark. The two men could see the open shaft, but they could not see into the shaft. Plaintiff's witness Masterson, the only occurrence witness, testified that as he and the decedent approached the elevator shaft they could not see into "the hole to see whether the elevator was there or not", so decedent decided to check and see whether the elevator was at the fifth floor level where they had left it. On cross-examination, Masterson testified that it was "absolutely uncertain" as to whether the elevator was at the fifth floor level. According to Masterson's testimony, he and decedent approached the elevator doors, whereupon decedent leaned against the jamb of the door and used his left foot to feel around inside the shaft to see if the elevator was still at the fifth floor level. In doing so, the decedent lost his balance and fell into the base of the shaft five floors below. He died as a result of the fall. After the unfortunate accident, Masterson used the stairway to descend to the first floor where he used an intercompany telephone to call the number which he had been given by the fire marshal that morning to use in case any help of lights were needed by the men.

Subsequent to the accident, examination of the elevator shaft revealed that the elevator was at the sixth floor level of the building. The elevator, a rope-geared hydraulic type, is placed in motion by pulling a rope or cable, and is stopped by the same rope or cable device. A characteristic of this type of elevator is that the car has a tendency to creep upward or downward unless the rope-geared hydraulic mechanism is centered. On the elevator in question, centering is accomplished by bringing a yellow marker on the starter rope to a position corresponding to a similar yellow mark which was painted on the elevator wall. Masterson testified that he had noticed no markings on the elevator wall or on the rope and, therefore, had made no effort to center the mechanism when he had left the elevator at the fifth floor level upon returning from lunch. The record shows that this elevator had been inspected by the Chicago Elevator Inspectors approximately two months before the accident and that the elevator was again inspected on the day following the accident. In each instance, it was discovered that the elevator was in good working order with no mechanical defects.

The cases which are most clearly in point with those facts are unanimous in holding that one who enters a dark elevator shaft, with knowledge that he is entering an elevator shaft, and falls to his injury is chargeable with contributory negligence as a matter of law. Central Publishing House of Reformed Church in U. S. v. Flury, 25 Ohio App. 214, 157 N.E. 794, affirmed 118 Ohio St. 154, 160 N.E. 679; Bonanomi v. Purcell, 287 Mo. 436, 230 S.W. 120; Darrow v. The Fair, 118 Ill.App. 665. In the Flury case, 157 N.E. at page 798, the court held that the act of entering a dark elevator shaft, without more, is "such contributory negligence as should prevent a recovery in law."

In Purcell, the plaintiff was transported by a freight elevator into a dark basement on defendant's premises. Neither defendant nor defendant's agent had operated the elevator. Upon arrival in the basement, plaintiff and the agent remained in the basement checking some hides. Defendant left the basement through a side door which opened onto a street a short distance from defendant's office door. Approximately one hour after his entry into the basement, plaintiff, his business completed, walked to the open elevator doors in the darkness and into the elevator shaft. The court held that it was contributory negligence as a matter of law for plaintiff, who had knowledge of a safe means of exit from the dark basement, and thence to defendant's office, to enter a dark elevator shaft on the chance that the elevator would still be where he had last seen it an hour earlier.

In Darrow v. The Fair, 118 Ill.App. 665, the decedent, working late at night on his employer's business, left a rope geared hydraulic elevator at the third floor level of defendant's building where plaintiff had a chore to do. Upon completing his work, he entered the open doors of the elevator shaft in the darkness and fell to his death. In holding that recovery against defendant was barred, the court held that "entering an elevator shaft in the dark" is contributory negligence as a matter of law.

Even if none of these cases is accepted as controlling precedent, they nevertheless are persuasive statements of legal principle, and the only reported expression of legal principle by any Illinois court, upon the precise issue with which we are faced.

Decedent could not see into the elevator shaft. He was "absolutely uncertain" whether the elevator was where he had last seen it several hours earlier. He knew the lighted stairway afforded him safe egress from the premises. He knew he could call for lights but he chose not to do so. Instead, he placed himself in a hazardous position on the brink of disaster. Disaster ensued. Such abandon and negligent disregard for his own safety should not be rewarded by a favorable judgment, unless we are ready to revise the laws of negligence and hold that every injury is compensable irrespective of the circumstances attending it.

I would reverse the judgment and remand the cause to the district court with directions to enter judgment for defendant.