**MAGILL v. TRAVELERS INS. CO.**

No. 12451.

Circuit Court of Appeals, Eighth Circuit.

Feb. 23, 1943.

Rehearing Denied April 7, 1943.

See 134 F.2d 612.

J. L. London, of St. Louis, Mo. (Phineas Rosenberg, of Kansas City, Mo., and Leahy, Walther & Hecker, of St. Louis, Mo., on the brief), for appellant.

Vincent L. Boisaubin, of St. Louis, Mo. (James C. Jones, Jr., and Jones, Hocker, Gladney & Grand, all of St. Louis, Mo., on the brief), for appellee.

Before SANBORN, WOODROUGH, and JOHNSEN, Circuit Judges.

SANBORN, Circuit Judge.

This action was brought by the conservator of Roy A. McClintic, an insane person, to recover disability benefits under a $5,000 policy of life insurance issued by the Travelers Insurance Company to McClintic in 1921. The policy contained the following provision:

"Settlement in the Event of Permanent Total Disability.

"After one full annual premium shall have been paid upon this contract and before a default in the payment of any subsequent premium, if the Insured shall furnish the Company with due proof that he has since such payment, prior to the maturity of the endowment and before having attained the age of 60, become wholly disabled by bodily injuries or disease, and will be permanently, continuously and wholly prevented thereby for life from engaging in any occupation or employment for wage or profit, the Company will waive the payment of any future premiums which may fall due on this contract during such disability, and the premiums so waived will not be deducted in any settlement of the contract. Beginning six months after receipt of due proof of permanent total disability sustained as aforesaid the Company will pay to the Insured each month, so long as he shall live and suffer such disability, an amount equal to $10 for each $1,000 of insurance stated on the first page hereof, such payments to be in addition to all other benefits hereunder provided. The Insured shall not have the right to commute such monthly instalment payments."

The premium due upon the policy on May 27, 1925, was not paid when due or within the grace period of thirty-one days thereafter. There was a sufficient amount to the credit of the policy to extend the insurance to June 9, 1925. No proof that the insured had become permanently totally disabled while the policy was in force was furnished to the company prior to June 27, 1925. On January 20, 1939, the insured was adjudged insane by the County Court of Sangamon County, Illinois, and on April 10, 1939, a conservator was appointed for him.

On May 6, 1939, counsel for the conservator wrote to the company as follows:

"Mr. Roy A. McClintic was committed to the Jacksonville State Hospital for the insane on August 6, 1927 and is now in that institution. For a long time prior to said commitment Mr. McClintic was insane and had insane delusions until he was finally committed on August 6, 1927.

"Under the above mentioned policy of insurance Mr. McClintic was entitled to disability benefits as provided for in said policy and was further entitled to have his policy kept in full force and effect by the waiver of premium provisions found in said policy. Mr. McClintic was totally and permanently disabled during the time said policy was in effect and as counsel for Henry E. McClintic, Guardian and Conservator of the Estate, we do make demand upon you for payment of all sums due as benefits under the above mentioned policy and do demand that said policy be reinstated and kept in full force and effect, as provided for therein because of his total and permanent disability.

"We have been informed that on two occasions during the time Mr. Roy McClintic was disabled you were given notice of his aforesaid disability.

"If there is any further information you desire, we will be glad to furnish the same upon request."

The company did not respond to this demand, and in 1940 this action was commenced.

The claim of the conservator was, in substance, that, while the policy was in force and in January, 1925, the insured became permanently totally disabled, within the meaning of the policy, by "bodily disease" (dementia praecox due to syphilis), and was thereafter incapacitated from making proof of disability as required by the policy, and that he was entitled by the terms of the policy to the waiver of premiums and to disability benefits from and after January, 1925. In other words, the con-

servator claimed that the policy had remained in force through waiver of premiums, and that disability payments were due the insured from the inception of his permanent total disability.

The company defended upon the grounds that the policy lapsed June 9, 1925; that due proof of permanent total disability had never been furnished; that the making of such proof was a condition precedent to the right to the waiver of premiums and to disability benefits; that the accrual of the right to disability benefits could not arise until six months after the receipt of proof; that the insanity alleged in the complaint is not a disability arising from "bodily injury or disease" within the meaning of the policy; and that the insured was not permanently totally disabled as alleged and was not incapacitated from furnishing proof.

The case was tried to a jury. The plaintiff's (appellant's) evidence tended to prove that, prior to the lapse of the policy, the insured had become insane as the result of syphilis, and that his insanity amounted to permanent total disability within the meaning of the policy and incapacitated him from furnishing proof of his disability. The evidence of the company tended to prove that the insured had not become permanently totally disabled from insanity prior to the lapse of his policy.

At the close of the evidence, the company moved for a directed verdict on the grounds that, since no proof of disability had been furnished as required by the policy, no liability had accrued; that the evidence was insufficient to establish that the insured was incapacitated from furnishing proof; and that insanity is not an excuse for failure to furnish proof, and is not a "bodily disease." The court denied the motion for a directed verdict, and submitted the case to the jury.

The jury was, in effect, instructed that if it found that the insured was permanently totally disabled by reason of insanity prior to June 27, 1925, and that he failed to furnish the company with due proof of his disability prior to that date because "he did not have mind, mentality or judgment enough to understand or comprehend the requirements or condition of the policy that proof of his disability had to be furnished to the defendant prior to a default in the payment of the premium due under said policy on May 27, 1925," and that if the jury further found that the insured did

not at any time between June 27, 1925, and January 20, 1939, when he was adjudged insane, have lucid intervals when he had sufficient mind, or mentality to comprehend and understand the requirement or condition of the policy that proof of his disability must be furnished to the company, then the plaintiff was entitled to recover at the rate of $50 per month from the time the jury found that he became permanently totally disabled.

The jury was directed to return a general verdict, and the following interrogatories were submitted:

"The jury will return with their verdict an answer to the following interrogatories, and the answer of the jury to such interrogatories must be either 'Yes' or 'no.'

"Interrogatory No. 1.

"Was the insured during the entire period between May 27, 1925 and June 27, 1925 insane to such an extent or degree that he did not have mind, or mentality, or judgment enough to understand or comprehend the requirement or condition of the policy that proof of his disability had to be furnished to the company before he would be entitled to disability benefits provided for under said policy?

"If the answer of the jury to Interrogatory No. 1 is 'Yes,' then the jury will answer Interrogatory No. 2. If, on the other hand, the answer of the jury to Interrogatory No. 1 is 'No,' then they will not answer Interrogatory No. 2.

"Interrogatory No. 2.

"Was the insured at all times between June 27, 1925, and January 20, 1939 insane to such extent or degree that he did not have mind or mentality enough to understand or comprehend the requirement of the policy that proof of his disability had to be furnished the company before he would be entitled to the disability benefit provided for under said policy?"

The jury answered the first interrogatory in the negative and returned a verdict for the company, upon which judgment was entered. This appeal is from the judgment.

The plaintiff challenges many of the court's instructions, but there are two main questions for decision:

1. Did the evidence which tended to prove that the insured, while his policy was in force, became permanently totally disabled by reason of insanity, and the evidence which tended to prove that his failure to furnish proof of disability then and

thereafter was due to his incapacity to furnish it, make a prima facie case of liability?

2. If insanity was an excuse for the failure of the insured to furnish due proof of disability while his policy was in effect, did the court correctly instruct the jury as to the degree of insanity which would excuse such failure?

■ The controlling law is that of Missouri, where the contract of insurance was made.

■ Before discussing the main questions, we shall dispose of two minor matters. The plaintiff attempted to prove by the insured's divorced wife that sometime in 1927, before she obtained her divorce from the insured, but while they were having domestic difficulties, she and a Mr. Sprague discussed the insured's mental condition and "this idea of change of the beneficiary" with someone in the St. Louis office of the Travelers Insurance Company. She could not recall where the office was or with whom she talked. She did not testify as to what was said. This was not substantial evidence that the company was notified in the year 1927 that the insured had become permanently disabled from insanity while his policy was in force. The company contends that insanity is not a "bodily disease." Syphilis is a bodily disease and insanity caused by syphilis, if permanently and totally disabling, is clearly within the terms of the policy.

There is no ambiguity in the disability provisions of the policy in suit. The conditions under which the insured was to become entitled to a waiver of premiums and to disability benefits, are plainly stated. Due proof of disability before default in premium payments has occurred is a prerequisite to liability for waiver of premiums and for disability benefits, and such liability accrues only after such proof is furnished. There is no promise that disability payments shall commence from the inception of disability; the promise is that, "Beginning six months after receipt of due proof of permanent total disability * * * the Company will pay to the Insured each month, so long as he *shall* live and suffer such disability, an amount equal to $10 for each $1,000 of insurance." This clause looks to the future and dates from the furnishing of proof. If it provided that "the Company will pay to the insured for each month that he *has* lived and suffered such disability" a certain sum,

the meaning would be entirely different. So far as the waiver of premiums is concerned, the waiver is "of any future premiums" after proof has been furnished.

■ An insured under such a policy as that in suit, who, while the policy was in force, became permanently totally disabled, but failed to furnish the required proof of disability prior to default in the payment of premium, could not recover disability benefits if he was capable of furnishing such proof. This because the furnishing of due proof prior to default is a condition precedent to liability, and the right to disability benefits can not arise until such proof is furnished. Bergholm v. Peoria Life Ins. Co., 284 U.S. 489, 52 S.Ct. 230, 76 L.Ed. 416; Lincoln Nat. Life Ins. Co. v. Ghio, 8 Cir., 111 F.2d 307; Mutual Life Ins. Co. of New York v. Drummond, 8 Cir., 111 F.2d 282, 285; Moss v. Metropolitan Life Ins. Co., 230 Mo.App. 70, 84 S.W.2d 395, 399; Feinberg v. New York Life Ins. Co., 233 Mo.App. 707, 127 S.W.2d 82, 88.

Does a different rule apply in Missouri if an insured becomes permanently totally disabled by insanity while his policy is in force, provided his insanity is such as to render him incapable of furnishing proof prior to a default in the payment of premiums and thereafter?

The problem presented is substantially the same as that considered by the Supreme Court of the United States in Mutual Life Insurance Co. of New York v. Johnson, 293 U.S. 335, 55 S.Ct. 154, 79 L.Ed. 398. As that court pointed out, the state courts are in hopeless disagreement upon the question. The Supreme Court included the case of Roseberry v. American Benevolent Ass'n, 142 Mo.App. 552, 121 S.W. 785, among those cases which support the view that the "waiver having been promised, though subject to a condition as to notice, there must be a liberal construction of a requirement that is merely modal or procedural, and the insurer will not be deemed, in respect of matters of that order, to have exacted the impossible." Pages 337, 338 of 293 U.S., page 155 of 55 S.Ct., 79 L.Ed. 398. The policy involved in the Roseberry case was an accident policy which required, as a condition precedent to the right of the insured to recover, notice to the insurer within ten days after the beginning of the disability. Roseberry had an accident which rendered him un-

conscious and incapacitated him from giving notice within ten days, and the insurer received no notice of the accident until nineteen days after it occurred. The St. Louis Court of Appeals said that "as a rule, failure to perform such condition within the time and manner specified, invalidates a claim to indemnity" (page 786 of 121 S.W.), but pointed out that the principal features of the contract had been fully executed,—the premiums had been paid, and the loss insured against had occurred,—and that the insurer was seeking to forfeit the insured's right to indemnity "because of his failure to perform a condition of the policy operating thereon after the fact of the loss." It was held that "the language used requiring notice within 10 days did·not, as a matter of law, include a stipulation requiring compliance therewith as to notice under the circumstances presented, and that notice given within a reasonable time after plaintiff became conscious will be sufficient." The St. Louis Court of Appeals referred to similar cases which held "that if a party assumes an obligation by contract, he should be held to discharge it, notwithstanding circumstances which render it impossible, for the reason he should have provided for such contingency;" but rejected the rule as being too harsh. The court referred with approval to a decision of the Supreme Court of Nebraska in Woodmen Accident Ass'n v. Byers, 62 Neb. 673, 87 N.W. 546, 55 L.R.A. 291, 89 Am.St.Rep. 777, a case "where the accident resulted in concussion of the brain, causing mental derangement," and in which it was held "that during the time of such derangement the duty of giving notice enjoined upon the insured by the policy was excused." Page 787 of 121 S.W.

■ The Supreme Court of Missouri, which has not passed upon the question under consideration, is undoubtedly free to follow the rule that mental incapacity does not excuse noncompliance with the requirement of due proof of disability. The Roseberry case, 142 Mo.App. 552, 121 S.W. 785, which relates to an accident policy and an incapacity to give notice resulting from the only contingency insured against, can be differentiated from a case involving a life policy providing for waiver of premiums and for disability benefits after proof of disability has been furnished. There is a justifiable distinction between a policy insuring against accident and requiring notice thereof within a certain time, and a policy insuring against death and carrying provisions for disability benefits after proof of disability has been received. Winkelmann v. Central States Life Ins. Co., 231 Mo.App. 501, 101 S.W.2d 736, 739. The Roseberry case however, is at least persuasive that, in Missouri, under such a policy as that in suit, an insured, who, by reason of insanity, becomes permanently totally disabled during the life of the policy and is thereby rendered incapable of furnishing due proof of disability, will be accorded the same rights as an insured who suffers a similar disability and who promptly furnishes the required proof. Hayes v. Equitable Life Assur. Soc., 235 Mo.App. 1261, 150 S.W.2d 1113, 1117. The trial court, in the case at bar, believed that to be the law. In deciding what the highest court of a state would probably hold the state law to be, great weight may properly be accorded by this court to the view of the trial court. Reitz v. Mealey, 314 U.S. 33, 39, 62 S.Ct. 24, 86 L.Ed. 21. This court would be justified in adopting a contrary view only if convinced of error. Helvering v. Stuart, 63 S.Ct. 140, 145, 87 L.Ed. ——; MacGregor v. State Mutual Life Assur. Co., 315 U.S. 280, 281, 62 S.Ct. 607, 86 L.Ed. 864. What we might think the law in Missouri ought to be with respect to insanity constituting an excuse for noncompliance with the plain provisions of a life policy conditioning liability for disability benefits, is of no consequence. Accepting the Missouri law to be that insanity which incapacitates an insured from furnishing proof of disability excuses him from furnishing such proof, the law certainly does not place him in a more advantageous position than he would have been in had he furnished the proof. Under the policy in suit, disability payments are to commence six months after proof is received. Therefore, the liability of the company for disability benefits would not accrue as of the time of the inception of the insanity, but six months thereafter.

■■ We agree with the trial court that insanity which would constitute permanent total disability within the meaning of the policy would not necessarily render an insured incapable of complying with the terms of the policy relative to furnishing due proof of disability; that if the insured

was capable at any time of furnishing such proof he was under obligation to do so; and that his failure, if any, in that regard would preclude recovery under the policy in suit. It is common knowledge that there are many kinds of insanity. An insured who was subject to periodical mental derangement might be permanently totally disabled within the meaning of a policy such as this, but if there were intervals during which he was sane, there would be no reason why he should be excused from furnishing proof of his known disability.

■ We do not agree, however, with the test furnished the jury by the trial court for determining the incapacity of the insured to furnish proof. An insane insured might have "mind, mentality or judgment enough to understand or comprehend the requirement or condition of the policy" relative to furnishing proof of disability, but not mentality or judgment enough to know that he was insane or was permanently totally disabled by insanity. There is evidence in the record which would indicate that the insured lacked insight into his own condition, and had illusions as to his ability to make large sums of money. It is certainly not unusual for an insane person to believe that he is sane, or even to have a sense of great mental power. It would be unreasonable to assume that an insane person could accurately appraise the nature and degree of his insanity. We think that if the insured's mental condition was such that it rendered him incapable of knowing (1) that he had a policy providing for disability benefits, or (2) that he was suffering from a mental derangement which entitled him to benefits, or (3) that he was required to furnish proof of his disability, he was incapacitated by insanity from furnishing proof of disability.

■ The plaintiff was not, as he contends, entitled to a verdict as a matter of law. The question whether the insured was permanently totally disabled by reason of insanity before his policy lapsed, and the question whether he was then and continuously thereafter incapacitated by insanity from furnishing proof of disability, were questions of fact for the jury.

Other errors are assigned, but we think they do not merit discussion.

■ Solely because of the error of the court in the instructions relating to the degree of insanity which would excuse the insured from furnishing proof of disability, the judgment appealed from is reversed, and the case is remanded for a new trial.