## TORNELLO v. DELIGIANNIS BROTHERS, Inc.

### No. 10010.

United States Court of Appeals
Seventh Circuit.

Feb. 16, 1950.

Rehearing Denied March 7, 1950.

554

Harold A. Fein, Chicago, Ill., George A. Gordon, Chicago, Ill., for appellant.

Amos J. Coffman, Eugene T. Devitt, Chicago, Ill., for appellee.

Before KERNER, FINNEGAN, and SWAIM, Circuit Judges.

KERNER, Circuit Judge.

C. Tornello, plaintiff, sued defendant to recover the purchase price paid for 58 boxes of cheese, and for expenses arising out of an alleged breach of warranty in that the cheese was unfit for human consumption. The case was tried by the court without a jury. The trial judge made special findings of fact, pronounced his conclusions of law thereon, and rendered judgment in favor of plaintiff. This judgment, defendant seeks to reverse.

The complaint showed affirmatively the requisite jurisdictional amount and the necessary diversity of citizenship. It alleged that on August 8, 1946, defendant shipped to plaintiff at Youngstown, Ohio, 100 boxes of cheese which plaintiff accepted and for which it paid the purchase price; that a libel was prosecuted against the cheese by the United States, and 58 boxes of the cheese were found to be adulterated in interstate commerce in that the cheese consisted of a filthy substance because of the presence therein of rodent excreta and maggots. The cheese was condemned, and the United States marshal was ordered to destroy it. As a result, plaintiff suffered the damages for which the suit was brought.

In its answer defendant averred that it delivered the cheese to the common carrier at Black Creek, Wisconsin, in good and edible condition, and denied that the cheese was contaminated and unfit for human consumption, or that it consisted of any filthy substance.

The record discloses that on October 30, 1946, a libel action against the cheese was filed in the United States District Court at Cleveland, Ohio, in which it was alleged that the cheese was adulterated in interstate commerce in that it consisted in whole or in part of a filthy substance by reason of the presence therein of rodent excreta and maggots. On November 4, 1946, pursuant to a warrant of seizure and monition issued in the libel action, 58 boxes of the cheese were seized by a United States marshal. The defendant was duly served with a summons and a copy of the Information in the libel action, and in addition, defendant was promptly notified by plaintiff

of the pendency of the libel action, but chose not to participate therein. Thereafter, the District Court in Cleveland found that the cheese had been shipped in interstate commerce in violation of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C.A. § 301 et seq., adjudged the cheese to be condemned, and ordered the marshal to destroy it.

The decision turns principally on the question whether defendant shipped the cheese in an adulterated condition. There is but little, if any, dispute as to the facts.

The court concluded that the plaintiff had performed every obligation of the contract of purchase, but that defendant had failed to perform its obligations in that the cheese was not fit and suitable for human food due to the presence therein of rodent excreta at the time the cheese was shipped to plaintiff.

The court made additional findings to the effect that the 100 boxes of cheese had been shipped from Black Creek, Wisconsin, by refrigerated truck and railroad car; that the cheese arrived at Youngstown, Ohio, on August 12, 1946, was unloaded during the afternoon of August 13 and placed in cold storage until November 4, 1946, except for 42 boxes that were removed and sold by plaintiff during the period between August 13 and November 4.

Defendant says that the issue is not *whether* the cheese became adulterated, but *when*. It makes the point that the decree in the libel action was not conclusive of that issue. It admits, as it must (see Kansas City Wholesale Grocery Co. v. Weber Packing Corporation, 93 Utah 414, 73 P.2d 1272, 1276), that the record in the libel action was admissible, that it is *res judicata* as to the condition of the cheese when seized by the United States marshal (Bob's Candy & Pecan Co. v. McConnell, 140 Tex. 331, 167 S.W.2d 511), but insists that the decree did not constitute evidence of adulteration on August 7, the date of shipment, and contends that plaintiff has failed to establish a breach of warranty.

The entire record in the libel action was admitted in evidence. Defendant concedes that such record was conclusive as to the condition of the cheese on November 4. On the issue whether defendant had shipped the cheese in an adulterated condition, the proofs were that defendant had examined the cheese before it was shipped, and that at that time the outside surface of the cheese was washed, and no contamination was observed; that upon its arrival at Youngstown plaintiff examined the cheese, but no contamination was discovered—there was no outer destruction of the surface and no evidence of any foreign material on the outside of the cheese. The boxes of cheese did not remain under refrigeration continually from the time they were delivered to plaintiff, but withdrawals were made from the cold storage on August 28, and on intermittent dates to and including October 26, to the plaintiff's unrefrigerated salesroom where the boxes were opened and kept for varying periods of from 1 to 17 days. Each piece so sold was examined and found to be in good condition so far as discernible by ordinary examination of the surface. Three pieces of the cheese were sold to the United States Food and Drug Administration on September 26, 1946. On November 4 plaintiff, in conjunction with an examination by an examiner of the Federal Food & Drug Administration, examined three or four boxes of the cheese seized by the marshal and found no contamination or break in the outside covering of the cheese.

An expert food technologist of many years' experience, fully acquainted with the deterioration of cheese and what causes deterioration of cheese, testified that if maggots were on the rind or on top of the cheese after it was manufactured, they would be visible, but that rodent excreta can not be seen by ordinary visible means; that if rodent excreta and maggots come into cheese *during the process of manufacture*, their presence could not be discovered by ordinary visual examination, but if the cheese becomes contaminated by rodent excreta and maggots *after* manufacture, the maggots could be discerned by ordi-

nary visual examination. It was his opinion that where rodent excreta and maggots are found *inside* the cheese, they are in the cheese because unsanitary or unclean raw material was used in the process of manufacture.

As already noted, there was positive undisputed evidence that before the cheese was shipped it was washed and no contamination was observed; that upon its arrival at Youngstown it was examined and no foreign material was found on the *outside* of the cheese; and that on November 4, the cheese seized by the marshal, upon a visual examination, showed no contamination nor break in the outside covering. Compare Smith v. Great Atlantic & Pacific Tea Co., 8 Cir., 170 F.2d 474.

■ Obviously, in the nature of this case, the question as to when the cheese became adulterated and whether contamination resulted from the presence inside the cheese of the contaminating factors, cannot properly be determined without the aid of the testimony of experts. True it is, the testimony of an expert must not be speculative and conjectural. His conclusion must be to a reasonable certainty, yet evidence such as testified to by the expert in this case was proper for the purpose of corroborating the evidence that the adulteration was *inside* the cheese. Under these circumstances, the testimony of the expert that the adulteration was caused by the unsanitary or unclean raw material used in the manufacture of the cheese did not leave the matter in a state of speculation. It was evidence to be considered on the question whether the rodent excreta was in the cheese on August 7, the date of shipment.

■ We have repeatedly said that a judgment may be reversed only if the findings of fact are clearly erroneous, and that a finding is not clearly erroneous if there is substantial evidence to support it. In the state of this record we cannot say that the findings and the conclusions of the trial judge were clearly erroneous. On the contrary, we think the District Court was justified in finding that defendant had shipped the cheese in an adulterated condition, and that the cheese had not become adulterated during shipment or after its delivery to plaintiff.

Defendant's final contention is that plaintiff had not complied with the Uniform Sales Act, c. 121½ §§ 48 and 49, Ill.Rev. Stat.1949, in that he failed to give notice of breach of warranty within a reasonable time,—in other words, that plaintiff was guilty of laches and hence was estopped in bringing his action.

■ Rule 8(c), Federal Rules Civil Procedure, 28 U.S.C.A., provides that "In pleading to a preceding pleading, a party shall set forth affirmatively * * * estoppel * * * laches * * * and any other matter constituting an avoidance or affirmative defense. * * *" The defense of estoppel or laches is an affirmative defense, Zeligson v. Hartman-Blair, 10 Cir., 135 F.2d 874; Bergeron v. Mansour, 1 Cir., 152 F.2d 27; Topping v. Fry, 7 Cir., 147 F.2d 715, and must be pleaded. If it is not pleaded, it is waived under Rule 12. Furthermore, defendant has not, in its statement of points, raised either the defense of estoppel or laches.

It is true that in its answer to plaintiff's complaint defendant averred that control and title to the cheese passed to plaintiff August 6, 1946, and that defendant submitted to plaintiff its invoice which provided that "All claims must be made within three days after receipt of goods." But whether such an averment did or did not raise the defense of estoppel or laches, we think it best that we dispose of defendant's contention on the merits.

■ There is no evidence that plaintiff knew that the cheese was contaminated before he was served with the summons in the libel action, and since plaintiff notified defendant of the breach of warranty on the day he was served with the summons— that being the first day that he knew of the breach—it is clear there is no merit to defendant's contention that plaintiff failed to give notice of breach of warranty within a reasonable time.

Affirmed.