**PACIFIC EMPLOYERS INS. CO.**

v.

**NANCE et al.**

No. 14946.

United States Court of Appeals
Eighth Circuit.

April 23, 1954.

Rehearing Denied May 18, 1954.

---

Irving Kuraner (Kuraner, Freeman & Kuraner, Kansas City, Mo., were with him on the brief), for appellant.

Robert E. Seiler, Joplin, Mo. (Edward V. Sweeney, Monett, Mo., and Seiler, Blanchard & Van Fleet, Joplin, Mo., were with him on the brief), for appellees.

Before SANBORN, WOODROUGH, and THOMAS, Circuit Judges.

SANBORN, Circuit Judge.

The question for decision is whether, under Missouri law, the District Court reached a permissible conclusion in deciding that an automobile liability policy issued by the appellant Insurance Company to Jack K. Tarvin on May 23, 1952, for the term of one year, had not been cancelled on October 20, 1952, by agreement between the Company and Tarvin, its assured, and was in force on November 2, 1952. The assured's wife, Suzanne Tarvin, on that day, while driving his automobile with his permission, had a collision which resulted in suits being brought against her for personal injuries and property damage. If the policy in suit was in force on November 2, 1952, the Company was obligated to defend the suits brought against the assured's wife and to pay, within the limits of the policy liability, any judgments recovered against her.

On November 15, 1952, the Company, which is a California corporation, brought this declaratory judgment action to secure an adjudication of nonliability under the policy in suit, asserting that "said policy was cancelled by agreement between plaintiff [the Company] and Sgt. Jack Tarvin on October 20, 1952." Jurisdiction was based on diversity of citizenship, the existence of a justiciable controversy, and the amount involved. The defendants (appellees) are the assured's wife and those who have sued her for damages because of the collision on November 2, 1952. They all denied that the policy had been cancelled prior to the collision.

There was no dispute between the parties as to the evidentiary facts. Each side claimed to be entitled to judgment as a matter of law, and each made a motion for summary judgment. The issue whether the policy in suit had been cancelled by agreement before November 2, 1952, was submitted to the District Court upon the pleadings, depositions, interrogatories and supporting affidavits, as well as briefs and oral arguments. Whether the issue was a pure question of law may be doubted, Spann v. Commercial Standard Insurance Co. of Dallas, Texas, 8 Cir., 82 F.2d 593, 595, but it was presented as such to the trial court. From the judgment in favor of the defendants, determining that the policy in suit was in force on November 2, 1952, the Company has appealed, contending, in effect, that it conclusively appeared from the undisputed facts that the policy had been cancelled before that date.

The facts which gave rise to this controversy are as follows: Tarvin, the assured, was, in May 1952, an Army Sergeant stationed at Fort Leonard Wood in Missouri. He had a wife and an automobile. In order to operate this automobile at the Fort, he had to procure automobile liability insurance. He made application on May 23, 1952, for such insurance to Burrell Brothers Pontiac and Cadillac Sales (which will be referred to as "Burrell"), of Rolla, Missouri. Burrell, who took applications for automobile liability insurance and mailed them to Julius E. Kern Company (hereinafter referred to as "Kern"), an agency of the Insurance Company, in St. Louis, Missouri, sent Tarvin's appli-

cation to Kern, and Kern issued the policy as of May 23, 1952, for the period of one year.

The policy contained the following provisions relative to cancellation:

"This Policy may be cancelled by the named insured by surrender thereof or by mailing to the Company written notice stating when thereafter such cancellation shall be effective. This Policy may be cancelled by the Company by mailing to the named insured at the address shown in this Policy written notice stating when not less than five days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice and the effective date and hour of cancellation stated in the notice shall become the end of the Policy Period. Delivery of such written notice either by the named insured or by the Company shall be equivalent to mailing.

"If the named insured cancels, earned premiums shall be computed in accordance with the customary short rate table and procedure. If the Company cancels, earned premiums shall be computed pro-rata. Premium adjustment may be made at the time cancellation is effected and, if not then made, shall be made as soon as practicable after cancellation becomes effective. The Company's check or a check of its representative mailed or delivered as aforesaid shall be a sufficient tender of any refund of premium due to the named insured."

By the terms of the policy, the Company could cancel it upon notice to the assured specifying the date when the cancellation would be effective, the date not to be less than five days after the mailing of notice. In case the Company cancelled the policy, the return premium was to be computed upon a pro-rata basis and was to be paid to the assured at the time cancellation became effective or as soon thereafter as practicable. The policy did not preclude the Company and the assured from agreeing upon a different method of cancellation than that provided.

On September 19, 1952, the Kansas City office of the Company wrote Kern to "Please effect replacement or cancellation of the following within 30 days from the date of this letter," listing a number of policies, including that in suit. On September 24, 1952, Kern wrote Burrell: "We are sorry to advise that the following do not meet underwriting requirements of the Pacific Employers Insurance Company and we would appreciate the return of the policies for pro-rata cancellation." The policy in suit was listed and the letter stated: "If replacement is desired, please let us know and we will attempt to provide another company for you."

Thereafter Marion Packheiser, an employee of Burrell who handled its insurance matters, sent a postcard to Tarvin reading as follows: "We are sorry to advise you but your requirements for liability insurance did not meet the standards of the Pacific Employers Insurance Company. Therefore we would appreciate your returning policy for pro-rata cancellation."

Tarvin, in response to this postcard, delivered his policy to Burrell on or about October 18, 1952, for cancellation. Marion Packheiser was not there at the time, but he talked to her on the telephone and said that he had brought the policy in for cancellation and wanted his money back and to send the return premium to his wife in Crocker, Missouri; that he was going overseas and would not need any more insurance. Tarvin understood, and thought Marion Packheiser understood, that the policy was cancelled immediately and that the insurance was ineffective after he had handed in his policy. He did not know what the policy provided with respect to notice of cancellation or that he was entitled to at least five days' written notice of the date of cancellation, and believed that he had no choice but to leave the policy at Burrell's.

On October 16, 1952, Carl G. Eckel, Chief Underwriter for Kern, who had written Burrell on September 24, 1952 to procure the return of Tarvin's policy for cancellation, wrote the Company, at Kansas City, requesting it to send a notice of cancellation of the policy to Tarvin. On October 20, 1952, Kern received from Burrell the Tarvin policy with a slip of paper attached, reading:

"This is other canceled
Policy
    "Marion
"Indiv does not wish to renew"

Eckel wrote on this paper, "Pro 10–20," meaning "cancel the policy pro-rata on and as of October 20, 1952." A clerk, working under the supervision of Eckel, wrote on the policy, "Cancel P/R 10–20–52 R.P. 22.97," meaning that the policy was cancelled pro-rata as of October 20, 1952, and that the return or unearned premium was $22.97. No notice of the date of the purported cancellation of the policy was given to Tarvin.

On October 21, 1952, the Company from its office in Kansas City sent Tarvin at Monett, Missouri, a letter which stated:

"Please take notice that Basic Automobile Liability Policy No. NS166851, issued to you by Pacific Employers Insurance Company is hereby cancelled, pursuant to the terms and provisions of such policy; such cancellation to take effect on the 3rd day of November, 1952, at 12:01 a. m., Standard Time."

A "Cancellation Memorandum" was then sent by the Kansas City office to Kern, showing the cancellation date of the policy to be November 3, 1952, and the return premium calculated pro-rata from that date to be $21.48. Later the Kansas City office sent Kern another memorandum showing a cancellation date of October 20, 1952, and the return premium to be $22.97. Suzanne Tarvin, on or about November 17, 1952, received at Monett, Missouri, a check in that amount from Burrell, apparently mailed from Rolla, Missouri, on November 8, 1952. The check was not cashed.

The District Court, in ruling that under Missouri law the policy in suit was not cancelled by mutual agreement as of October 20, 1952, but was still in force on November 2, 1952, said:

"* * * As above pointed out, there is no contention made that the insured was ever consulted as to the October 20, 1952, cancellation date. Hence, there was no agreement to cancel the policy as of that date. Consequently, the only means for cancellation thereof sans an agreement to that effect, was for plaintiff to give insured the five (5) days' notice, as provided in the policy. Continental Ins. Co. of N. Y. v. Phipps, Mo.App., 190 S.W. 994. This the plaintiff did on October 21, 1952, after its agent was in possession of the policy, and the cancellation date was fixed in that notice as of November 3, 1952, a date subsequent to attachment of liability under the policy. At the time such cancellation notice was given in accordance with the policy provision, plaintiff is to be held to notice that its agent was in possession of the policy in question and that no agent on its part had previously agreed with insured as to October 20, 1952, being a cancellation date therefor. Cf. Packard Mfg. Co. v. Indiana Lumbermens Mut. Ins. Co., 356 Mo. 687, 203 S.W.2d 415; 29 Am.Jur., p. 613. The mere fact that insured had surrendered possession of his policy to the insurer did not terminate his contract of insurance. All that act amounted to under the facts here was the taking of possession of the policy by the insurer, for cancellation in the manner specified in the policy. Boston Ins. Co. v. Read, 11 Cir., 166 F.2d 551, Dill v. Lumbermens Mutual Ins. Co., 213 S.C. 593, 50 S.E.2d 923. No waiver of such policy requirement for cancellation by the insurer is here estab-

**8**

lished; first, because insured is shown to be wholly uninformed as to a specific cancellation date; and, second, because insured did not knowingly intend to waive such policy provision when forthwith cancellation upon delivery of the policy is conclusively established as not being a condition of agreement to cancel. State ex rel. Continental Ins. Co. of N. Y. v. Becker, 336 Mo. 59, 77 S.W.2d 100; Bragg v. Royal Ins. Co., 115 Me. 196, 98 A. 632; 29 Am.Jur., Sec. 297, Note 2, p. 37, 1952 Pocket Part."

■ ■ The burden of demonstrating that the judgment appealed from is based upon a clear misconception or misapplication of Missouri law is on the Company.

In National Bellas Hess, Inc. v. Kalis, 8 Cir., 191 F.2d 739, 741, this Court said:

"This Court has repeatedly ruled that it will accept the considered views of a District Judge as to doubtful questions of local law. Many of the cases in this Court and the Supreme Court which support that rule will be found in the case of Buder v. Becker, 8 Cir., 185 F.2d 311, 315–316. In Western Casualty & Surety Co. v. Coleman, 8 Cir., 186 F.2d 40, 43, we said: 'The burden of demonstrating error is upon the Casualty Company. In a case controlled by local law, that burden is a peculiarly heavy one. This Court is not an appellate court of the State of Missouri and establishes no rules of law for that State. We have repeatedly said that, in reviewing doubtful questions of local law, we would not adopt views contrary to those of the trial judge unless convinced of error, and that all that this Court reasonably can be expected to do in such cases is to see that the determination of the trial court is not induced by a clear misconception or misapplication of the local law. Russell v. Turner, 8 Cir., 148 F.2d 562, 564; Buder v. Becker, 8

Cir., 185 F.2d 311, 315, and cases cited. If a federal district judge has reached a permissible conclusion upon a question of local law, we will not reverse, even though we may think the law should be otherwise.'"

See, also, Magill v. Travelers Insurance Co., 8 Cir., 133 F.2d 709, 713; Doering v. Buechler, 8 Cir., 146 F.2d 784, 788; Globe Indemnity Co. v. Wolcott & Lincoln, Inc., 8 Cir., 152 F.2d 545, 547; Buder v. Becker, 8 Cir., 185 F.2d 311, 315.

■ The arguments and briefs of counsel, who are Missouri lawyers, have demonstrated that the question of law presented for review is a doubtful one. It has been decided adversely to the Company by a Missouri federal district judge who was entirely competent to rule upon the question and who has given it careful consideration. Our conclusion is that the District Court has reached a permissible conclusion as to a doubtful question of local law, and that the judgment appealed from should be affirmed.

Affirmed.