Harold B. WACKERLE and Evelyn
Wackerle, Appellants,

v.

PACIFIC EMPLOYERS INSURANCE
COMPANY, a Corporation,
Appellee.

No. 15146.

United States Court of Appeals,
Eighth Circuit.

Jan. 31, 1955.

Rehearing Denied March 8, 1955.

Harold B. Bamburg, Sedalia, Mo. (Bamburg & Bogutski, Sedalia, Mo., and Earl T. Crawford, Sedalia, Mo., on the brief), for appellants.

Harold T. VanDyke, Kansas City, Mo. (Davis, Thomson, VanDyke & Fairchild, Kansas City, Mo., on the brief), for appellee.

Before SANBORN, WOODROUGH, and VAN OOSTERHOUT, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

This is an appeal from a declaratory judgment determining that appellee (plaintiff below) was not liable to the appellants on an automobile liability insurance policy and dismissing appellants' counterclaim. Jurisdiction is based on diversity of citizenship. The decisive issue is the validity of a driver exclusion endorsement.

On November 15, 1952, appellee, for a consideration of $145.16 paid it, delivered to Muriel Wymer its standard automobile liability policy running for one year, with coverage upon insured's 1951 Mercury automobile of $15,000 per person, $30,000 per accident for bodily injury; $5,000, property damage; and further provisions for medical payments, comprehensive and collision insurance. The policy contained an omnibus clause which reads as follows:

"III *Definition of Insured*

With respect to the insurance for bodily injury liability and for property damage liability the unqualified word 'insured' includes the named insured and also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission."

As to cancellation by the insurer the policy provides:

"This policy may be cancelled by the Company by mailing to the named insured at the address shown in this Policy written notice stating when not less than five days thereafter such cancellation shall be effective."

There is an additional provision that in the event of cancellation pro rata unearned premiums are to be returned to the insured. The policy gives the insurer no right to raise the premium nor does it contain any reference to any rating or classification of risk.

At the time of the issuance of the policy, Donald Wymer, son of Muriel Wymer, the named insured, was operating an Oldsmobile owned by the family and insured by appellee through its same local agency. Donald later had an accident which demolished the Oldsmobile, and thereafter he used the Mercury described in the involved policy. On January 26, 1953, appellee's local agent, Mrs. Rosencrans, contacted Mrs. Wymer and requested her to sign a rider reading:

"Driver Exclusion

"In Consideration of the Premium Charged, it is Hereby Understood and Agreed That the Undermentioned Policy Excludes Coverage While the Automobile Covered by the Policy Is Being Driven By Donald Wymer.

"Accepted

"Nothing herein contained shall be held to vary, alter, or extend any of the terms, conditions or limitations of the undermentioned Policy other than as above stated."

The agent explained to Mrs. Wymer that if she did not sign the rider the insurer would have to charge an additional premium because the car would be operated by a driver under 25 years of age, and the agent didn't know wheth-

er the company would keep the policy in force if she didn't sign the exclusion agreement. The agent fully explained that if the rider was signed there would be no coverage while the car was operated by Donald. Mrs. Wymer signed the rider. It was approved by the insurer and attached to the policy as an endorsement. There is neither pleading nor proof of fraud or duress in obtaining the rider. No part of the original premium was returned.

About May 22, 1953, the insured traded the Mercury covered by the policy for a 1953 Mercury and reported this to the insurer's local agent. Thereupon, an endorsement was attached to the policy eliminating coverage of the 1951 Mercury and substituting the 1953 Mercury. Upon the endorsement appears a statement showing the premium on the new car for the balance of the original term of $77.18 and credit on the old car of $70.83, making a difference in premium of $6.35 which Mrs. Wymer paid the insurer. This increase was caused by larger premiums for comprehensive and collision insurance, there being no change in the amount due for personal injury or property damage. This endorsement also contains a provision, "Nothing herein contained shall be held to vary, alter, waive, or extend any of the terms, conditions or limitations of the undermentioned policy other than as above stated."

On October 27, 1953, the insured Mercury, while being operated by Donald Wymer with his mother's consent, was involved in a collision with the Wackerle automobile. By amendment to the Wackerles' answer and counterclaim it is shown that subsequent to the commencement of this action the Wackerles recovered a judgment against Donald Wymer and Muriel Wymer in the Circuit Court of Pettis County, Missouri, for $17,500 and costs, for damages resulting from the collision hereinabove mentioned, and in their counterclaim they ask judgment against appellee for this amount. Muriel Wymer, Donald Wymer, and others were made defend-

ants to this action, but only Harold B. Wackerle and Evelyn Wackerle have appealed, and where the word "appellants" appears in this opinion, same refers to the Wackerles.

Subject to the appellants' objections, evidence was introduced that the policy was issued at Class 1 rate, which rate is applicable when there is no driver in the household under 25. The Class 2 rate which is higher is used when there is a driver in the household under 25. Donald Wymer was under 25 years of age. No written application for the policy appears in the record, and there is neither pleading nor proof that the Wymers were guilty of any fraud or misrepresentation in obtaining the policy.

The insurance contract is a Missouri contract. Consequently, it is the duty of this court to follow the law of Missouri. Mutual Benefit Health & Accident Ass'n v. Cohen, 8 Cir., 194 F.2d 232, 239.

The appellants do not question the right of an insurer in its policy to exclude coverage as to a particular driver, and concede this may be accomplished by endorsement issued with the policy at the time it is written. In such cases the premium paid gives the insured the coverage he bargained for. In the present case it is undisputed that the policy when issued covered the insured automobile while it was being operated by the son Donald. The insured had fully performed her part of the insurance contract by paying the stipulated premium. Appellants strenuously contend that, in order to modify the policy as written by adding a driver exclusion clause, it is absolutely essential that such an agreement be supported by a consideration. Such appears to be the law of Missouri. This court has fully considered this problem in Mutual Benefit Health & Accident Ass'n v. Cohen, supra. That case involved an insurance policy issued in 1928 which provided for monthly benefits for the duration of disability resulting from disease. On October 30, 1942, the insured and insurer executed a rider reciting that in con-

sideration of the acceptance of renewal of the policy the maximum period of recovery for sickness or accident liability was limited to one year, the rider to become effective on date of next premium payment. Thereafter, insured became ill for over a year. The insurance company paid for only one year's disability, and suit was brought to recover for the balance of the period of disability, the insured contending that the rider was void as being without consideration. This court relied upon and fully discussed the case of Rice v. Provident Life & Accident Ins. Co., 231 Mo. App. 560, 102 S.W.2d 147. This court found that the Rice case was not squarely in point on the issue that there was no consideration, as in the Rice case the rider was made effective July 20 at a time when the premium had been paid to August 1, whereas in the Cohen case the rider was to be effective on the next premium payment date. In the Cohen case at pages 240–241 the court says:

"From the foregoing analysis of the Rice opinion we conclude that the Court decided that refraining from increasing the premium for the same coverage in lieu of *cancellation* of the policy was not a legal consideration for the rider reducing the coverage at the same premiums, at a time when the company had a right to cancel the policy, because the policy provided a stated premium for the coverage therein set forth. It was in connection with such holding that the sentence here involved and quoted hereinbefore was used. The effect of that language is that the Court thought the same result would follow where a like rider was executed in connection with a renewal at a premium paying date.

"Although this language applies to the situation now before us, it was an *obiter dictum* when used in the Rice case. The issue in the Rice case was one of the rights of the company as to cancellation and not as to renewal. This language

was not necessary to a determination of the issue of consideration *vel non* under the fact situation there. Indeed, the effect of a renewal of the policy was discussed and determined upon an entirely different ground, to wit, the invalidity of the rider *at the time it was executed and was expressed to be effective*, which was before the renewal date. * * *"

The Rice case is directly in point upon the consideration issue in the case now before us, for here, as in the Rice case, the attempt has been made to make the rider effective during a period for which the premium had been fully paid. The appellee argues that the cases on health and accident policies are not in point because of the difference in contracts, that in connection with health and accident contracts there is no classification of risk used as a basis for determining the premium, and that in health and accident cases it is not shown that there is a changing condition which would give rise to a right to raise the premium. None of such reasons assigned affords a valid basis for distinction. Changes of conditions which give rise to additional risks will arise at least as frequently in the health cases. It is obvious that a person who has had rheumatism or arthritis, as involved in the Rice case, is far more apt to have future disability than a well person. Most types of insurance policies reserve the right to cancel, and frequently the health policies give the insurer a right to refuse to renew. In any event, consideration is an element of the law of contracts, and applies to all types of contracts including all types of insurance contracts.

In the Cohen case, supra, the following excerpt from the Rice case is quoted:

" 'The rider itself recites that it is subject otherwise to all conditions, agreements, and limitations of the policy as written except as in itself is specifically provided. It is true that those that make a contract may unmake it or substitute

another, either wholly or partially inconsistent; *but the validity of the substituted contract must be determined,* like that of any other, *in the light of the situation existing at the hour of its making.* If valid, then it will supersede or modify the first to the extent that the two will be unable to stand together. Lieberman v. Templar Motor Co., 236 N.Y. 139, 140 N.E. 222, 29 A.L.R. 1089.

" 'Applying the rule thus stated, the rider in question was at the time that it was executed void for the reason that no consideration at such time existed therefor; and, being inconsistent with and repugnant to the provisions of the original policy, it cannot stand. The original policy as continued from month to month or as renewed from month to month was unaffected by such rider.' "

█ Since the policy as originally written provided for coverage when the insured automobile was being driven by Donald Wymer, this valuable right could not be taken away from the insured by mutual consent alone unsupported by consideration. No consideration for the rider has been shown.

The trial court based its decision largely on the following conclusion of law:

"The 'discontinuance' of insurance coverage as to the 1951 Mercury automobile owned by the insured Muriel Wymer, and the 'afford (ing of) insurance with respect to the (new) automobile described' in the 'Automobile Substitution Endorsement' was in legal effect the substitution of a new contract for an old one existing between the parties. The payment of an additional premium by insured for such new contract, in and of itself, was sufficient consideration to sustain the 'driver exclusion' endorsement attached to the policy of insurance in suit."

Appellee insists that the foregoing conclusion is a correct statement of law, and that the substitution of automobiles by the endorsement was in effect the substitution of a new contract for the old contract. A similar argument was urged in the Rice and Cohen cases. In the Rice case, the Missouri court, in rejecting such argument says, 102 S.W.2d at page 151:

"It is contended further by the defendant that the plaintiff's policy having terminated on August 1, 1932, after the execution of the rider, the plaintiff thereafter renewed it from month to month, thereby entering into new contracts with the defendant of which the rider was an integral part, and that, since the policy when renewed was subject to the rider, the rider became a part of the renewed contract and furnished a complete bar to the plaintiff's action, regardless of the fact that it was not originally based on a valid consideration.

"We cannot agree to such contention. While the renewal of an insurance policy constitutes a separate and distinct contract for the period of time covered by the renewal, it is nevertheless a contract with the same terms and conditions as those contained in the policy which is renewed."

And at a later point, the court says:

"Applying the rule thus stated, the rider in question was at the time that it was executed void for the reason that no consideration at such time existed therefor; and, being inconsistent with and repugnant to the provisions of the original policy, it cannot stand. The original policy as continued from month to month or as renewed from month to month was unaffected by such rider."

The Cohen case gathers from the Rice case that the Missouri court would apply the reasoning as to forfeiture cases to renewal cases. This court in the Cohen case 194 F.2d at page 241 says:

**6**

"*  *  * It is clear that the facts and the issues governing the rights of cancellation and the rights in connection with renewals of insurance policies are, in their nature, different. That is true both as to the Rice case and as to this case. The circumstance that the Court stated that it would reach the same result and for the same reasons in a renewal situation as it did reach in a cancellation before, it does not prevent such expression from being *obiter dictum* as to the renewal matter.

*  *  *  *  *  *

"*  *  * While the Rice case is not authoritatively controlling, because of differences in issues and facts, yet the reasoning and language used therein point strongly to the conclusion that had the issue before us been there involved, the result would have been against the company. We do not intimate what our view might be if we were not bound to follow the State law as nearly as we can predict it from the material at hand. We take merely the judicial venture which seems to us as most probably anticipating what the State Courts would determine as to the State law."

By the substitution agreement, hereinabove referred to, the insurer was obligated to substitute the new car for the old car, the insured being required to pay any additional premium required because of the application of the insurance to the new automobile. The evidence shows that the difference of $6.35 paid insurer for the substitution was due to higher premiums for the comprehensive and collision insurance. The comprehensive insurance was to the extent of the actual cash value of the automobile. The basis of the difference is not explained, but without doubt the additional premium was occasioned by the higher value of the new car, and consequently the higher damages that would have to be paid in case of fire, theft, or collision. It seems probable that the computations were based on the same rates that were applied in determining the original premium. In any event, it would appear that this was contemplated by the provision as to additional premium in the newly-acquired automobile provision in the policy. We can not see where the payment of this $6.35 by the insured can in any way furnish a consideration for the exclusion rider. We hold that the substitution agreement did not provide a consideration for the exclusion rider.

Appellee likewise contends that since appellants were strangers to the insurance contract and modification thereof they can not raise the question of lack of consideration. The pleadings, if any, of the Wymers are not set out in the record. The court's decree recites that no appearance was made for such defendants. In support of this proposition the appellee cites Stanfield v. W. C. McBride, Inc., 149 Kan. 567, 88 P.2d 1002; and Employers Mutual Casualty Co. v. American Automobile Insurance Co., 10 Cir., 131 F.2d 802. Both of these cases arose out of the same transaction and involve the application of the law of Kansas. They support appellee's contention. The two cases involving the Kansas law are the only ones cited by appellee to support its contention. In this case we are concerned with the law of Missouri. The Missouri statutes provide for direct action by the injured party against the insurer if he has obtained judgment against the insured and same is not paid within thirty days. 1949 Missouri Revised Statutes, section 379.200, V.A.M.S.[1]

1. "§ 379.200. *Judgment creditor may collect insurance, when*

"Upon the recovery of a final judgment against any person, firm or corporation by any person, including administrators or executors, for loss or damage on account of bodily injury or death, or damage to property if the defendant in such action was insured against said loss or damage at the time when the right of action arose, the judgment creditor shall be entitled to have the insurance money,

■ In an action by an injured party against the wrongdoer's insurance company, the injured party stands in the shoes of the insured, and his rights are no greater and no less than the insured's would have been in an action between the insured and the insurer on the policy. Bauman v. Western & Southern Indemnity Co., 230 Mo.App. 835, 77 S.W.2d 496; Binswanger v. Employers Liability Assurance Corp., Ltd., 224 Mo. App. 1025, 28 S.W.2d 448; General Casualty & Surety Co. v. Kierstead, 8 Cir., 67 F.2d 523; Coleman v. New Amsterdam Casualty Co., 247 N.Y. 271, 160 N.E. 367, 72 A.L.R. 1443.

In the Binswanger case, supra, the injured party sued the insurance company for reformation for mutual mistake as to the insured's name and for damages. Insured was not a party to the suit. The injured party was granted relief. In discussing the issue which now concerns us, the court said [224 Mo.App. 1025, 28 S.W.2d 454]:

"It is claimed that 'neither plaintiff nor his intestate were parties to the contract of insurance, nor do they bear such relationship to it or to Fleeman-McNeill Funeral Home as entitles him to maintain an action for reformation.' In this connection it is argued that 'the rule uniformly applied in determining who are entitled to reformation, limits the remedy to original parties or those in privity with them.'

\* \* \* \* \* \*

"It is well settled that a contract may be made for the benefit of a third person and such a contract, when supported by a valid consideration, may be sued upon by such person. The rule is well stated in Uhrich v. Globe Surety Co., 191 Mo.App. 111, 114, 166 S.W. 845, 846, as follows:

provided for in the contract of insurance between the insurance company, person, firm or association as described in section 379.195, and the defendant, applied to the satisfaction of the judgment, and if the judgment is not satisfied within

"'A contract between two parties upon a valid consideration may be enforced by a third party when entered into for his benefit. *This is so though such third party be not named in the contract, and though he was not privy to the consideration.* It is sufficient in order to create the necessary privity that the promisee owe to the party to be benefited some obligation or duty, legal or equitable, which would give him a just claim.'

"In [La Crosse] Lumber Co. v. Schwartz, 163 Mo.App. 659, 665, 147 S.W. 501, 502, it is stated:

"'A third person for whose benefit a contract is made may enforce the contract in an action prosecuted in his own name and in an action on a common-law bond of the nature of that in suit a materialman for whose benefit the bond was taken may sue as plaintiff.'

"That there was such a privity between the insured and the deceased, to whom the insured owed a duty not to negligently injure, there can be no question. \* \* \* "

■ It is apparent that under the laws of Missouri the appellants are entitled to raise the issue that the driver exclusion rider was void for want of consideration.

■ Appellee further argues that the insured, and consequently the appellants, would be estopped from raising the defense of lack of consideration. Estoppel is not pleaded. This issue does not appear to have been raised in any way in the trial court. Estoppel is an affirmative defense which must be pleaded. Rule 8(c), Federal Rules of Civil Procedure, 28 U.S.C.A. If not pleaded the defense can not be raised on appeal. Mutual Benefit Health & Accident Ass'n v. Cohen, supra, footnote 2, page 234;

thirty days after the date when it is rendered, the judgment creditor may proceed in equity against the defendant and the insurance company to reach and apply the insurance money to the satisfaction of the judgment."

Cummings v. Moore, 10 Cir., 202 F.2d 145; Tornello v. Deligiannis Brothers, Inc., 7 Cir., 180 F.2d 553.

We reach the conclusion that the driver exclusion rider is void for want of consideration, and that hence the policy issued by the appellee covered the operation of the insured car by Donald Wymer at the time of the accident; and it is further concluded that under Missouri law appellants are entitled to assert the issue that the rider is void for lack of consideration. Since appellants have already obtained a judgment in the State court, they are entitled to bring suit against the insurer and they have done this in their counterclaim. Appellants are entitled to recover upon their counterclaim to the extent of the coverage provided by the policy. We can not determine from the judgment whether the amount thereof is within the policy limits as the judgment in evidence does not indicate how much of it is for personal injury and to whom, and how much, if any, is for property damage.

The judgment determining that the appellee is not obligated on its policy is reversed, and this case is remanded to the District Court with directions to enter judgment for appellants upon their counterclaim to the extent that such judgment is within the limit of the coverage provided by the policy involved in this action.

SANBORN, Circuit Judge (dissenting).

Judge Ridge, who decided this case, has adequately and accurately stated the essential facts as follows:

"The only issue between the parties is as to the validity of the 'driver exclusion' endorsement attached to the policy of liability insurance issued to Muriel M. Wymer and covering her 1953 Mercury automobile.

"A policy was issued to insured on November 15, 1952, covering a 1951 Mercury. A 'driver exclusion' endorsement, excluding coverage to Donald Wymer, was attached to that policy on January 26, 1952, with the consent of the insured, after insured had been informed by the insurer's agent, that if her son Donald Wymer had access to, and did drive and operate the Mercury automobile, an additional premium would have to be paid to the plaintiff. Insured, Muriel Wymer, signed and accepted endorsement on January 26, 1952, effective at 12:01 A.M.

"On May 22, 1953, Mrs. Wymer purchased a new 1953 Mercury. On the same day, in consideration of additional premium of $6.35, an 'automobile substitution endorsement' was attached to the above policy. By said endorsement, the insurance with respect to the 1951 Mercury was 'discontinued', insured was given credit for $70.83 return premium, and in consideration of $77.18 additional premium, insurance coverage was afforded to her 1953 Mercury, subject to all the terms, conditions and limitations of the policy then existing.

"The 'driver exclusion' endorsement was then a part of said policy.

"A loss payable clause was contained in the automobile substitution endorsement in favor of defendant Jenkins-Greer Motor Company.

"On October 27, 1953, while Donald Wymer was driving the 1953 Mercury, with the consent of his mother, he was involved in a collision with a car driven by Harold B. Wackerle. As a result thereof, Harold B. Wackerle and his wife, Evelyn Wackerle, recovered judgment against Donald Wymer, in the total sum of $17,500.00, in ensuing litigation."

The Judge reached the following conclusions of law:

"The 'discontinuance' of insurance coverage as to the 1951 Mercury automobile owned by the insured Muriel Wymer, and the 'afford (ing of) insurance with respect to the (new) automobile described' in the 'Automobile Substitution Endorsement' was in legal effect the substitution of a new contract for an old one existing between the parties. The payment of an additional premium by insured for such new contract,

in and of itself, was sufficient consideration to sustain the 'driver exclusion' endorsement attached to the policy of insurance in suit.

"Under said 'driver exclusion' endorsement, insurance coverage was not afforded if the 1953 Mercury automobile was being driven by Donald Wymer."

I regard Judge Ridge's decision as sound and logical. The appellants have failed to convince me that it is based upon any misconception or misapplication of the law of Missouri.

Unquestionably, the contract to insure the 1953 Mercury did not come into existence until May 22, 1953. The contract was evidenced by the "Automobile Substitution Endorsement" which expressly made the terms and conditions of the policy which had covered the 1951 Mercury applicable to the coverage on the 1953 car. Surely that made the "driver exclusion" endorsement in the contract covering the 1951 car a term or condition of the contract covering the 1953 car.

What the insured and the Company did on May 22, 1953, was, in legal effect, the full equivalent of cancelling the policy on the 1951 car by mutual consent, applying the unearned premium on that policy upon the premium applicable to the new contract on the 1953 car, with terms and conditions identical with those of the policy it superseded, including the endorsement which excluded Donald Wymer from coverage.

But if the contract to insure the 1953 Mercury were to be considered as a mere continuation of the policy on the 1951 Mercury and subject to its infirmities, I would still be of the opinion that the endorsement excluding Donald Wymer from coverage was not without consideration. It is obvious that the insured, at the time she agreed to this endorsement, was faced with doing that or with having to pay a higher premium for her insurance or with having the insurance cancelled by the Company. She voluntarily chose a limitation of the risk insured against. I can see no valid basis for refusing to give effect to what the parties, under the circumstances, agreed to. Nor do I think there is any sound reason why an insured, to save an automobile liability policy from cancellation, may not agree with his insurer to exclude an accident-prone member of the insured's family from liability coverage.

In federal cases controlled by state law this Court has consistently relied upon and ordinarily accepted the considered views of the trial judges with respect to doubtful questions arising under the laws of their respective states. Very recently, Judge Johnsen in Kasper v. Kellar, 8 Cir., 217 F.2d 744, 747, said of our rule in that regard:

"* * * And on the question of resolving what local law is, which is unclear or unsettled, we have particularly emphasized, as our many decisions indicate, that we desire and will heavily rely upon the considered appraisal of a District Judge as to what the local law of his jurisdiction is.

"This is as it should be, for factors of evaluation and judgment on unsettled questions will naturally be present at the local level, which are not available to us, such as unreported trial-court decisions, percolating judicial trends, accepted legal climate, and familiarity with prevailing professional thought and temper."

See, also, Guyer v. Elger, 8 Cir., 216 F.2d 537.

It seems particularly important to me that this rule should be adhered to in cases involving doubtful questions of insurance law, since so much of it reflects the local practices and customs of insureds, insurers and insurance agents, as well as existing judicial and legal trends and attitudes. About six months ago, in Pacific Employers Ins. Co. v. Nance, 8 Cir., 212 F.2d 4, 8, Judge Ridge was affirmed by this Court upon the ground that his decision was based upon a permissible conclusion as to a doubtful question of Missouri insurance law. It can be said in the instant case, as we said in that case:

"The arguments and briefs of counsel, who are Missouri lawyers, have demonstrated that the question of law presented for review is a doubtful one. It has been decided adversely to the Company by a Missouri federal district judge who was entirely competent to rule upon the question and who has given it careful consideration. Our conclusion is that the District Court has reached a permissible conclusion as to a doubtful question of local law, and that the judgment appealed from should be affirmed."

Other cases in which we have declined to substitute our judgment for that of the trial judge with respect to doubtful questions of local insurance law are: Magill v. Travelers Ins. Co., 8 Cir., 133 F.2d 709, 713; Doering v. Buechler, 8 Cir., 146 F.2d 784, 788; Railway Mail Ass'n v. Chamberlin, 8 Cir., 148 F.2d 206, 208; Globe Indemnity Co. v. Wolcott & Lincoln, Inc., 8 Cir., 152 F.2d 545, 547; Western Casualty & Surety Co. v. Coleman, 8 Cir., 186 F.2d 40, 43. See also and compare, Buder v. Becker, 8 Cir., 185 F.2d 311, 315.

I would affirm the judgment appealed from.